*In re* GONZALO ARDÍN ROMÁN, querellado.

Núm. 82.

*Sometido:* 14 de octubre de 1953. *Resuelto:* 30 de noviembre de 1953.

A. *Miranda Esteve*, R. *Martínez Álvarez*, *Jr.*, y A. *Miranda Cárdenas*, abogados del querellado; *Rafael L. Ydrach Yordán*, *Fiscal Auxiliar del Tribunal Supremo*, abogado de El Pueblo.

*Per Curiam:* En una querella de *disbarment* incoada ante nos por el Fiscal Auxiliar de este Tribunal contra el abogado y notario Gonzalo Ardín Román se alega, en parte, que en tres ocasiones distintas, el querellado, actuando como notario público, dió fe de que ciertas personas suscribieron y juraron ante él tres pagarés a favor de la Asociación, Fondo de Ahorro y Préstamo de los Empleados del Gobierno Insular, sin que real y efectivamente dicho Gonzalo Ardín Román hubiera tenido ante sí los firmantes de esos pagarés. en el acto de suscribirse los documentos y sin constarle personalmente y a través del acto de firmar en su presencia, que las firmas fuesen de los otorgantes. En cuanto a una. de las personas que aparecía firmando uno de los pagarés como fiador solidario, esto es, en cuanto a Belén Balenciano, se alega en la querella que Gonzalo Ardín Román no la conocía real y efectivamente, a pesar de él haber dado fe de que la conocía personalmente, alegándose además que no era cierto que la persona conocida por Belén Balenciano hubiera suscrito tal pagaré en su presencia o en sitio alguno. Se sigue alegando en la querella que el querellado registró los referidos juramentos en su Registro de Affidavits; que el primero de los tres pagarés mencionados envolvía la suma.

de mil dólares; que la Asociación mencionada, "descansando en la fe y firma notarial del querellado, le facilitó al Sr. Angel Elí Acevedo, en calidad de préstamo la suma de mil dólares, de la cual cantidad dicho Angel Elí Acevedo satisfizo la suma de $695.33, quedando en descubierto la cantidad de $351.92 ($304.67 de principal y $47.25 de intereses), que hubo de satisfacer exclusivamente y en su perjuicio el fiador Ramón Pérez Díaz, por no ser cierto que la persona conocida por Belén Balenciano hubiera suscrito como fiadora, en presencia del querellado, o en sitio alguno, el referido pagaré"; que el segundo pagaré envolvía la suma de mil ochocientos dólares con intereses a razón del 6 por ciento y el tercero envolvía la suma de mil ochocientos dólares a razón del 6 por ciento anual.

En su contestación, el querellado admite los hechos esenciales al efecto de que los supuestos firmantes de los pagarés no suscribieron ni juraron los documentos en presencia del querellado y que el querellado no conocía ni conoce a la señora Belén Balenciano, a pesar de haberlo hecho constar así al dar su fe notarial, pero que los demás suscribientes eran conocidos personalmente por él y sus firmas eran también conocidas por él; que él llamó por teléfono a varios de los demás suscribientes y ellos le aseguraron, por teléfono, que ésas eran sus firmas; que todas las firmas, con excepción de la de la señora Belén Balenciano, eran auténticas y legítimas; que uno de los suscribientes, como deudor principal, era un empleado que trabajaba en la propia oficina de la "Asociación de Empleados"; que uno de los documentos fué llevado a la oficina del querellado por el mensajero de la propia oficina de la Asociación; que por esas razones "no pudo el querellado ni imaginar siquiera en aquel momento que una de las firmas pudiera ser apócrifa"; que el querellado fué indudablemente sorprendido en su buena fe. Alega el querellado que, en cuanto al primer pagaré, el querellado pagó la suma total adeudada, inmediatamente después de haberse enterado que la firma de la señora Belén Balenciano no era

legítima. Expone además el querellado que él "tiene más de treinta años de ejercicio en la profesión notarial y ha autorizado en exceso de 50,000 affidavits de todas clases y es ésta la primera vez en que por un exceso de buena fe ha sido sorprendido en sus actuaciones, habiéndolo de inmediato remediado hasta el máximum de sus posibilidades, sin que haya habido perjuicio de clase alguna para ninguna de las personas envueltas en este caso."

En una moción radicada posteriormente por el querellado, él "acepta se han cometido las infracciones a la Ley Notarial imputadas en la querella", pero alega lo siguiente, a manera de atenuantes:

"1. Que las circunstancias en que se suscribieron los documentos por el querellado fueron tales, que a cualquier Notario le hubiera sucedido lo mismo.

"2. Que en los hechos o cargos números Dos y Tres, no hubo reclamaciones algunas, toda vez que los deudores principales pagaron íntegramente sus préstamos y que solamente en el hecho primero de la querella fué que surgió reclamación, y en este caso, el querellado fué la única víctima, ya que pagó en su totalidad el dinero dejado de pagar por el deudor principal.

"3. Que el querellado lleva (36) años en el ejercicio constante de la profesión en esta ciudad de San Juan, y siempre trató de hacerlo de la manera más honesta posible, pensando siempre que nadie tuviera que intervenir con él.

"4. Que el documento que ha motivado esta querella es un pagaré a favor de la Asociación Fondo de Ahorro y Préstamo de los Empleados del Gobierno Insular, cuyo pagaré está suscrito por Angel Elí Acevedo (el empleado) y por Ramón Pérez Díaz como fiador y por doña Belén Balenciano como fiadora. El empleado Angel Elí Acevedo recibió el dinero importe del préstamo y al poco tiempo abandonó el trabajo, se ausentó de Puerto Rico y quedó en descubierto en el préstamo, con la cantidad de TRESCIENTOS y pico de dólares. La Asociación de Empleados le cobró esta cantidad a don Ramón Pérez Díaz, uno de los fiadores, y éste, haciendo buena su firma, pagó a la Asociación de Empleados la cantidad dejada de pagar por Angel Elí Acevedo, el empleado. Don Ramón Pérez Díaz, una vez pagada por él la suma dejada de pagar por el deudor principal, trata de obtener del otro fiador la parte proporcional de lo pagado a la Aso-

ciación de Empleados, y este fiador le dice que no ha firmado ningún documento y por tal razón nada tiene que pagar por cuenta de Angel Elí Acevedo. En estas condiciones, don Ramón Pérez Díaz, en vez de llamar al querellado e imponerlo de la situación, se dirige directamente al Hon. Tribunal Supremo y no le da al querellado la oportunidad de arreglar el asunto satisfactoriamente, tal y como lo trató de arreglar al tener conocimiento de lo sucedido. ¿Hizo bien don Ramón Pérez Díaz? Don Ramón Pérez Díaz y el querellado han mantenido relaciones cordiales de negocios durante más de (35) años, sin que en ningún momento esas relaciones se hayan enturbiado por nada, de ahí la sorpresa que recibió el querellado al ser llamado por el Fiscal entonces, Lcdo. J. Rivera Barreras, primera persona que le informó al querellado lo sucedido. Para terminar debo decirles, que soy el más pobre de todos los abogados de esta isla; no tengo una peseta ahorrada, y no la tengo, debido a que hay nueve personas que dependen exclusivamente de mí para su sostenimiento, y todo lo que gano, lo empleo en estas atenciones."

A esa moción para que se dejase sin efecto una vista señalada, el querellado acompañó varias declaraciones juradas de algunos de los suscribientes de los pagarés, ratificando las alegaciones atenuantes del querellado. Este Tribunal dictó una resolución al efecto de que admitiendo el querellado haber cometido las infracciones a la Ley Notarial que se le imputan en la querella, se dejaba sin efecto el señalamiento de la vista de este recurso, sometiéndose el caso al Tribunal para su decisión.

■■■■ Dos factores son importantes en la resolución final de este recurso. De un lado, estamos convencidos de que el querellado, al actuar como lo hizo, no tenía intención alguna de defraudar a persona alguna.

De otro lado, desde un punto de vista objetivo, la actuación del querellado envuelve una clara infracción al postulado de la fe notarial, base esencial de todo el sistema notarial. Una lesión a la fe notarial, de no ser penalizada adecuadamente, podría servir de precedente para futuras infracciones, lo que implicaría la destrucción de los cimientos

de la Ley Notarial. Es indudable que el querellado debe ser penalizado. En cuanto a la naturaleza y magnitud de la pena a ser impuesta, es nuestra obligación el considerar las circunstancias personales del querellado y los factores subjetivos que rodearon las transacciones, pero es también nuestra misión el mantener la integridad de nuestro sistema notarial. La ausencia de la intención maligna de parte del querellado es una circunstancia atenuante de significación en cuanto a la magnitud de la pena, pero la realización del acto en sí, destructor de la fe notarial, implica que el querellado debe ser suspendido del ejercicio de su profesión de abogado y notario. En la selección de la pena en cuanto a si procede una suspensión o solamente una censura, el interés social en mantener la integridad de los fundamentos de la Ley Notarial debe predominar sobre el tratamiento individualizado del querellado. Una vez hecha tal selección, las circunstancias individuales aquí envueltas son especialmente significativas a los fines de determinar los límites y contornos del término de suspensión. El juzgador no puede ignorar el atributo de compasión justificada, pero tampoco debe sacrificar intereses públicos de alta calidad.

Este caso es muy análogo al de *In re Vergne Ortiz*, 67 D.P.R. 30, en el cual se suspendió al querellado en el ejercicio de su profesión por un término de tres meses. *Considerando las circunstancias totales de este caso, debe suspenderse al querellado Gonzalo Ardín Román en el ejercicio de su profesión de abogado y notario por un término de un mes, y así se ordenará.*

---

Opinión disidente, en parte, del Juez Asociado Sr. Negrón Fernández, en la cual concurre el Juez Asociado Sr. Belaval.

La inobservancia, de buena fe como en este caso, de un acto de reconocimiento de firma, en un *documento privado que no contiene acto alguno protocolizable o inscribible en el*

*Registro de la Propiedad*, Art. 39, III, de la Ley para Regular el Ejercicio de la Profesión Notarial en Puerto Rico, de 8 de marzo de 1906, según quedó enmendada por la núm. 389 de 9 de mayo de 1951—el de que el documento se suscriba ante el propio notario autorizante—no debe tener, de acuerdo con el último párrafo del artículo 38 de dicha ley, consecuencias penalizadoras—correctivas, más bien—más allá del ámbito de la propia actividad profesional en que se produjo: la gestión notarial; y siempre en proporción a los motivos que la indujeron. Aunque esta última circunstancia se ha tenido presente, en parte, por el Tribunal, me parece más ajustado a derecho, más racional y más justo para con un miembro de nuestro foro que no tiene precedente indigno en su larga práctica como notario; que no actuó con intención de defraudar; que asumió inmediatamente responsabilidad civil por su descuido, y que confiesa éste, el que la suspensión se limite al ejercicio de la profesión notarial solamente. La falta, aun seria como es, en el ejercicio del notariado, no implica depravación moral, ni envuelve colusión, ni fraude. Bajo esas circunstancias, la suspensión del cargo de notario exclusivamente, parece estar más en armonía con la ley y ser tan eficaz para el propósito correctivo del estatuto, que no puedo concurrir en la suspensión del querellado del ejercicio de la abogacía también.