*In re:* FAUSTINO R. APONTE, RAFAEL DÁVILA ORTIZ, ADOLFO SANTIAGO RIVERA y JOSÉ N. DAPENA LAGUNA, querellados.

Números 87, 88, 89 y 90.
*Sometidos:* 13 de febrero de 1956. *Resueltos:* 14 de marzo de 1956.

*Faustino R. Aponte,* pro se; *Benjamín Ortiz, Luis E. Dubón* y *R. García Cintrón,* abogados del querellado Sr. Dávila; *Héctor Martínez Colón, Lorenzo Lagarde Garcés, Arturo Cintrón García, Héctor L. Lugo Bougal* y *Rafael Hernández Matos,* abogados de los querellados Sres. Santiago Rivera y Dapena; *Rafael L. Ydrach Yordán, Fiscal del Tribunal Supremo,* abogado de El Pueblo.

PER CURIAM: En cumplimiento de resoluciones dictadas por nosotros con fecha 4 de noviembre de 1955, el Fiscal de este Tribunal presentó sendas querellas de desaforo (*disbarment*) contra los abogados-notarios Faustino R. Aponte, Rafael Dávila Ortiz, Adolfo Santiago Rivera y José N. Dapena Laguna. Hacemos inmediatamente una reseña de los hechos imputados por dicho funcionario en cada una de las querellas instadas, así como de las contestaciones radicadas por los querellados.

En la querella contra *Faustino R. Aponte,* el Fiscal alega que el 26 de enero de 1950 este querellado voluntariamente y a sabiendas violó las disposiciones de la "Ley Estableciendo un Registro de Affidávits o Declaraciones ante Notarios y otros Funcionarios" al autorizar el affidávit número 33, supuestamente otorgado por Francisco Arroyo, José Martínez y Ricardo R. Pérez; y al dar fe de conocer personalmente a dichos otorgantes y de que los dos primeros como fiadores y el último como principal suscribieron personalmente y ante él el documento correspondiente, cuando real y efectivamente

no tuvo ante sí, ni vió firmar a los mencionados fiadores, no conocía a Francisco Arroyo, y la firma de éste en efecto era falsificada; y que mediante el affidávit expresado los otorgantes suscribieron como principales un pagaré por la suma de $1,700 más intereses al 6% anual a favor de la Asociación, Fondo de Ahorro y Préstamo de los Empleados del Gobierno de Puerto Rico,(1) institución ésta que descansando en la fe y firma notarial del querellado le facilitó a Ricardo R. Pérez la indicada suma.

En su contestación original el querellado admite los hechos alegados en la querella y alega que nadie resultó perjudicado, toda vez que el deudor principal pagó la obligación; que en la comisión de la irregularidad notarial que admite, no medió fraude ni mala fe ni lucro de clase alguna; y que según su información el mismo individuo que le indujo a él a faltar al cumplimiento de su deber como notario también lo hizo con otros tres compañeros.

En una contestación complementaria el querellado sostiene que si bien el fiador José Martínez no suscribió ante él el documento en cuestión, él tenía conocimiento personal de la firma de dicho fiador con motivo de las relaciones de amistad que desde muchos años le han unido al señor Martínez, y además que la firma de Martínez en el pagaré era auténtica; que en relación con la firma de Francisco Arroyo él fué inducido a certificarla como auténtica por el principal de la obligación Ricardo R. Pérez, quien había sido por muchos años miembro de la policía insular y a quien conocía desde hacía mucho tiempo; que la obligación fué saldada en o antes de su vencimiento por el deudor principal, no habiendo persona alguna que haya sufrido perjuicio; que autorizó el affidávit sin recibir compensación alguna, de buena fe, y descansando en las representaciones de su amigo el policía Pérez; que desde su admisión al ejercicio de la abogacía y del

---

(1) En lo sucesivo nos referiremos a la Asociación, Fondo de Ahorro y Préstamo de los Empleados del Gobierno de Puerto Rico simplemente como la "Asociación de Empleados."

notariado (17 de septiembre de 1934 y 8 de febrero de 1937, respectivamente) se ha dedicado al ejercicio activo de esas profesiones y ha observado siempre una conducta personal intachable; y que aún reconociendo que ha incurrido en una infracción a los postulados de la fe notarial, lo hizo de buena fe y sin intención de lucro alguno.

En la presentada contra *Rafael Dávila Ortiz*, el Fiscal alega que el 23 de agosto de 1954 y en Yabucoa este querellado faltó "a su fe notarial, al autorizar el affidávit número 22,917 en su...registro de affidávits, otorgado por Francisco Arroyo, José Martínez y Ricardo R. Pérez y dar fe de conocer personalmente a dichos otorgantes y de que los dos primeros como fiadores y el último como principal, suscribieron personalmente y ante él...el documento correspondiente, cuando real y efectivamente el querellado no tuvo ante sí al fiador Francisco Arroyo en el acto de suscribirse el documento, no constándole personalmente y a través del acto de firmar en su presencia que la firma de Francisco Arroyo fuera auténtica"; que mediante el indicado affidávit los otorgantes suscribieron como principales un pagaré por la suma de $1,925, más intereses al 6% anual a favor de la Asociación de Empleados, institución que descansando en la fe y firma notarial del querellado y en la obligación que asumían los supuestos otorgantes le facilitó a Ricardo R. Pérez la suma de $1,925.

El querellado Dávila Ortiz en su contestación admite haber autorizado el affidávit en cuestión y haber dado fe de conocer a los otorgantes, así como que en el acto de suscribirse el documento no tuvo ante sí al fiador Francisco Arroyo, negando sin embargo que no le constara personalmente que la firma de Arroyo fuera auténtica. En relación con ese apartado de la querella, alega afirmativamente el querellado que desde el 12 y 19 de diciembre de 1924, cuando fué admitido al ejercicio de la abogacía y del notariado, respectivamente, se ha dedicado continuamente al ejercicio de su profe-

sión de abogado y notario en esta isla, habiendo durante todo ese tiempo observado una conducta personal y profesional intachable que le ha granjeado el respeto y confianza de la comunidad, así como la de sus compañeros abogados y de los jueces ante los cuales ha postulado; que desde entonces ha otorgado 6,161 escrituras públicas y 24,198 affidávits; que Francisco Arroyo, firmante del documento en cuestión, ha sido amigo y cliente suyo desde el año 1925 habiéndole representado durante ese período en varias causas criminales y civiles, y habiendo autorizado como notario una serie de documentos, que menciona, en que figura como parte el fiador Arroyo; que durante el año 1941 y por el término de 30 días desempeñó interinamente el cargo de juez municipal del distrito judicial de Yabucoa y Maunabo y durante ese término Francisco Arroyo suscribió ante él distintas fianzas para la libertad provisional de acusados en causas criminales; que con motivo de sus relaciones de amistad y de abogado y cliente con Arroyo ha visto firmar a éste numerosas veces otros documentos; que a base de esos hechos en 23 de agosto de 1954 conocía la firma de Francisco Arroyo; que Ricardo R. Pérez era un policía que estuvo destacado primero en Maunabo y luego en Yabucoa desde principios del año 1938 hasta mediados del año 1941, a quien conocía muy bien con motivo del ejercicio de su profesión de.abogado en esos pueblos; que el 23 de agosto de 1954 Pérez, quien ya había ascendido a cabo y prestaba entonces servicios en Villalba o Juana Díaz, se personó en la oficina del querellado para que éste le autorizara el documento en cuestión, acompañado del otro firmante José Martínez, también amigo y cliente suyo por más de treinta años; que requirió del cabo Pérez que Francisco Arroyo compareciera a firmar ante él el documento de referencia y acto seguido Pérez salió para Maunabo a buscar a Arroyo; que Pérez regresó con el documento firmado por Arroyo y le informó que este último no podía venir a Yabucoa, pero que podía estar seguro que el documento había

sido firmado por Arroyo; que de momento se negó a autorizar el documento, pero movido por la insistencia de Pérez, por la urgencia que éste decía tener de regresar a Villalba o Juana Díaz, y por el conocimiento personal que él tenía de Francisco Arroyo, se avino a autorizar el documento, cosa que hizo después de constatar cuidadosamente la firma de Arroyo con las firmas que de éste aparecían en los otros documentos públicos otorgados por dicho señor, archivados en la notaría del querellado, hecho lo cual y después de firmar en su presencia los señores Pérez y Martínez procedió a autorizar el mencionado affidávit; que la firma de Arroyo en el documento de referencia es auténtica y ha sido reconocida por éste como la suya en la investigación que se ha practicado en relación con el asunto; y que la deuda evidenciada por el aludido documento ha sido saldada en su totalidad a la Asociación de Empleados por el propio deudor Ricardo R. Pérez. Alega además el querellado que aun cuando reconoce que ha incurrido en una infracción técnica a los postulados de la fe notarial, toda vez que hizo constar erróneamente que Francisco Arroyo había firmado en su presencia, lo hizo así de buena fe, sin intención de defraudar o engañar a nadie; y que su actuación, aunque constituye una desviación técnica de los cánones del notariado, no implica depravación moral ni ha causado daño o perjuicio a persona alguna.

En relación con el querellado *Adolfo Santiago Rivera* alega el Fiscal que el 15 de diciembre de 1953 y en Juana Díaz este querellado faltó a su fe notarial, al autorizar el affidávit número 23 de su registro de affidávits, supuestamente otorgado por Francisco Arroyo, José Martínez y Ricardo R. Pérez; al dar fe de conocer personalmente a dichos otorgantes y de que los dos primeros como fiadores y el último como principal suscribieron ante el querellado el documento de referencia, cuando real y efectivamente éste no tuvo ante sí, ni vió firmar, ni conocía personalmente a Francisco Arroyo ni a José Martínez, y las firmas de éstos en efecto eran fal-

sificadas; que mediante el affidávit de referencia los otorgantes suscribieron como principales un pagaré por la suma de $1,925, más intereses al 6%, a favor de la Asociación de Empleados y que esa institución, descansando en la fe y firma notarial del querellado y en la obligación que asumían los supuestos otorgantes le facilitó a Pérez la indicada suma.

En su contestación el querellado niega que en la fecha de referencia, o en cualquiera otra, faltara a su fe notarial al autorizar el aludido affidávit, mas acepta que en la noche de dicho día y en la población de Juana Díaz, actuando como notario, autorizó el affidávit en cuestión, a virtud del cual se autenticó un pagaré suscrito por Ricardo R. Pérez como principal, y por Francisco Arroyo y José Martínez como fiadores; que como a las ocho de la noche, encontrándose en su hogar se presentó Ricardo R. Pérez, persona amiga suya y quien entonces era cabo de la policía destacado en aquel pueblo, y le requirió para que le prestara sus servicios como notario público a los fines de autenticar las firmas en un pagaré; que el querellado sugirió a Pérez que volviera al siguiente día a su despacho notarial, pero al notar que en el pagaré en cuestión estaban estampadas las firmas de Francisco Arroyo y José Martínez, personas desconocidas para él, le informó a Pérez que no podía autenticar las firmas de esas dos personas a menos que concurrieran personalmente a su despacho; que en ese momento Pérez le informó que tenía que salir al otro día temprano para Salinas, que no estaría en Juana Díaz por la mañana, que tenía suma urgencia en tramitar el préstamo por la necesidad imperiosa que tenía de su importe, y que le hiciera el favor de autenticarlo esa misma noche; y que accediendo a los ruegos de Pérez sin tener motivo alguno para sospechar que las firmas del documento pudieran ser espurias y dando entero crédito al cabo Pérez, por su buena reputación en la comunidad, accedió a ir a su despacho y allí autenticó el documento, estando presente tan sólo el cabo Pérez; que le prestó ese servicio gratuitamente,

y aún más, le proveyó también gratuitamente del sello de rentas internas de 25¢ que se canceló en el documento; que cuando le manifestó a Pérez que los fiadores del documento tenían que venir a su presencia, Pérez le indicó que esas personas habían estado en Juana Díaz durante el día y no encontrando notario allí habían tenido que irse para sus respectivos pueblos, motivo por el cual no se los podía llevar a su presencia aquella noche, pero asegurándole en todo momento que las firmas de Arroyo y Martínez que figuraban en el documento eran legítimas, auténticas y genuinas; que el importe del préstamo fué satisfecho oportuna y totalmente, tanto en su principal como en sus intereses por el propio Ricardo R. Pérez y, como cuestión de hecho, no fueron perjudicadas, defraudadas o lesionadas en sus intereses la entidad acreedora o terceras personas; que a la fecha en que autenticó dicho documento solamente llevaba dos meses en el ejercicio de su profesión de abogado y 45 días como notario; que para aquel entonces él tenía 26 años de edad; y que en los 22 affidávits que anteriormente había autenticado, todos los firmantes habían comparecido personalmente ante él y el autenticado bajo el número 23 de su registro fué el único caso en que se enfrentó a la situación de hechos ya expuesta y en que se le hizo incurrir en una irregularidad, aprovechándose el beneficiario de la juventud e inexperiencia profesional del querellado.

Y en la querella presentada contra *José N. Dapena Laguna* el Fiscal alega que el 16 de octubre de 1952 y en Ponce este querellado faltó a su fe notarial al autorizar el affidávit número 9,837 de su registro, supuestamente otorgado por Francisco Arroyo, José Martínez y Ricardo R. Pérez, al dar fe de conocer personalmente a dichos otorgantes y que los dos primeros como fiadores, y el último como principal suscribieron personalmente y ante él el aludido documento, cuando real y efectivamente este querellado no tuvo ante sí ni vió firmar, ni conocía a Francisco Arroyo ni a José Martínez

y la firma de estos últimos era falsificada; y que mediante el affidávit en cuestión los otorgantes suscribieron como principales un pagaré por la suma de $1,950, más intereses al 6% anual a favor de la Asociación de Empleados, la que descansando en la fe y firma notarial del querellado, y en la obligación que asumían los supuestos otorgantes le facilitó a Pérez la indicada suma.

Acepta el querellado Dapena Laguna en su contestación haber autorizado el affidávit de referencia, mediante el cual se autenticó un pagaré suscrito por Ricardo R. Pérez y por otras dos personas que le fueron identificadas por Pérez como Francisco Arroyo y José Martínez; que al momento de autenticarse ese documento Pérez era un cabo de la policía y un funcionario público personalmente conocido por varios años por el querellado, que le merecía el más completo crédito; que Pérez le aseguró en su propio despacho notarial y en presencia de los otros firmantes que éstas eran las personas así nombradas y que otorgarían, como al efecto otorgaron, como fiadores dicho documento; que al prestar gratuitamente y por amistad el servicio de autenticación de dicho documento, el querellado no tuvo el más leve motivo para sospechar o dudar de la identificación, reconocimiento y firmas de dichos dos fiadores, ni en la posibilidad de ser engañado por ellos tres, ni para exigir, dadas las condiciones del suscribiente principal, otros testigos de conocimiento en cuanto a dichos dos fiadores; que el importe del préstamo fué satisfecho oportuna y totalmente en su principal e intereses por Ricardo R. Pérez, y sin que otras personas hubiesen sido requeridas para su pago o para responder de la legitimidad de las firmas que en el documento aparecían; y que tampoco fueron perjudicadas, defraudadas o lesionadas en sus intereses la entidad acreedora o terceras personas. El querellado además incorpora a su contestación la transcripción de las notas taquigráficas tomadas en el caso G-55-105, seguido por El Pue-

blo de Puerto Rico contra Ricardo R. Pérez por el delito de falsificación, ante la Sala de Ponce del Tribunal Superior de Puerto Rico. (²)

La sec. 3 de la Ley de 12 de marzo de 1908—4 L.P.R.A. sec. 889—Estableciendo un Registro de Affidávits o Declaraciones ante Notarios y otros Funcionarios, textualmente dispone:

"Sección 3. El *affidavit* o declaración de autenticidad, se ajustará a las siguientes fórmulas:

"En el caso de tratarse de un reconocimiento de firma, con juramento: 'Suscrito y jurado, ante mí, por ............... ................ (nombre, mayoridad, profesión y vecindad), a quien conozco personalmente,( o de cuyo conocimiento me he asegurado por el dicho de los dos testigos que también suscriben, y a quienes conozco), hoy, en.....................(data y fecha.)'

"En el caso de tratarse de un reconocimiento de firma sin juramento, la fórmula será idéntica, suprimiéndose las palabras 'y jurado.'

"En cualquier otro caso, se empleará una fórmula breve y sencilla, que comprenda la autenticidad del acto, expresando siempre el funcionario autorizante que conoce personalmente al interesado, o a los testigos de conocimiento.

".        .        .        .        .        .        ."

Son hechos incontestables que Faustino R. Aponte al autorizar el affidávit en cuestión no tuvo ante sí, ni vió firmar a los fiadores solidarios (deudores principales) Martínez y Arroyo, y que la firma de este último resultó ser falsificada; que Rafael Dávila Ortiz hizo constar en la declaración jurada que Francisco Arroyo suscribía en su presencia, cuando a él le constaba personalmente que eso no era cierto; que Adolfo Santiago Rivera no tuvo ante sí, ni vió firmar, ni conocía personalmente a los fiadores solidarios. Francisco Arroyo y José Martínez, y que las firmas de éstos resultaron falsificadas; y que José N. Dapena Laguna, sin conocer a

---

(²) De esa transcripción de evidencia, que solamente ha sido certificada por el taquígrafo de récord, aparece que Pérez se declaró culpable del delito de falsificación imputádole.

. José Martínez ni a Francisco Arroyo, y sin asegurarse de su conocimiento por el dicho de dos testigos, autorizó el affidávit ya aludido. Como los querellados admitieron las irregularidades imputádales, creímos innecesario celebrar vistas en relación con sus querellas.

No hay duda de que al actuar en la forma en que lo hicieron los querellados han faltado a la fe notarial en ellos depositada. El ejercicio de la profesión de abogado-notario exige que las personas investidas de tan alto ministerio procedan siempre no sólo con el mayor celo, sino también que cumplan estrictamente con la ley y con los deberes a ellos impuestos. Los querellados, al actuar en la forma en que lo hicieron, ni actuaron con celo en el ejercicio de su ministerio, ni dieron cumplimiento a las disposiciones de la ley antes copiada.

Vistas las excusas expuestas por cada uno de los querellados, distinto a los casos de *In re Piñero*, 77 D.P.R. 630; *In re Ardín*, 75 D.P.R. 496; e *In re Vergne Ortiz*, 67 D.P.R. 30, no les separaremos del ejercicio de su profesión de abogado. Reprobamos, no obstante, su conducta como tales abogados al proceder en la forma en que lo hicieron en relación con los hechos imputados en las querellas. Sin embargo, de conformidad con los aludidos precedentes y en armonía con lo dispuesto por la sec. 38 de la "Ley para Regular el Ejercicio de la Profesión Notarial en Puerto Rico", aprobada el 8 de marzo de 1906, según fué enmendada por la Ley núm. 389 de 1951—4 L.P.R.A. sec. 846—*suspenderemos a cada uno de los querellados en el ejercicio de la profesión notarial por el término de un mes.*

---

Opinión concurrente del Juez Asociado Sr. Negrón Fernández.

Estoy conforme—por los motivos consignados en la opinión, en parte disidente, emitida por mí en el caso de *In re Ardín*, 75 D.P.R. 496, 501 y ratificada en el de *In re Piñero*, 77 D.P.R. 630, 633—con que la suspensión de los aquí que-

rellados se circunscriba al ámbito de la propia actividad profesional en que se produjo: la gestión notarial.

La falta de los notarios en estos casos—al igual que la de los notarios en los ya citados, y la del notario en el de *In re Vergne Ortiz*, 67 D.P.R. 30—aún seria como es en la práctica del notariado, no implica depravación moral ni envuelve colusión ni fraude; tampoco hay en estos casos, como no había en aquéllos, precedente profesional indigno. En esa situación, no se justifica un desaforo, que en si trascendería los límites disciplinarios que la falta demanda.

Aunque el castigo impuesto a los notarios en los anteriores casos no puede, por consumado, borrarse de su vida profesional, la aplicación de una norma disciplinaria distinta en estos casos debe considerarse la apropiada para medir el alcance del mismo y reducir, a su nivel adecuado, el rigor del desaforo sufrido.