In re Petition for Admission to the Minnesota State Bar by Craig Rollin HAUKEBO.

No. CO–84–718.

Supreme Court of Minnesota.

Aug. 3, 1984.

Donald R. Betzold, Brooklyn Center, for appellant.

C. Allen Dosland, New Ulm, for State Bd. of Law Examiners.

WAHL, Justice.

Petitioner Craig Haukebo appeals from the decision of the State Board of Law Examiners that the Board has insufficient evidence upon which to recommend him to this court as a person of good moral character for admission to the bar of the State of Minnesota. Based on Haukebo's record of three convictions of driving while intoxicated between 1979 and 1981, the Board has refused to recommend his admission to the bar unless and until Haukebo provides them with a satisfactory chemical dependency evaluation from a Board-approved agency or successfully completes a treatment program with such an agency.

Haukebo graduated from the University of North Dakota Law School in 1982. That same year, he submitted to the State Board of Law Examiners an application to take

the Minnesota State Bar Examination. As part of the application, Haukebo indicated that he had pled guilty to three charges of driving while intoxicated between 1979 and 1981. The Board contacted him, expressed its concern about a possible drinking problem, and requested that he undergo an alcohol and chemical dependency evaluation. Between November 1982 and September 1983, Haukebo submitted to three chemical dependency evaluations—two at agencies recommended by the Board and one at an agency of his own choosing. During this time, he also took and passed the Minnesota Bar Examination, with the understanding that the Board would not recommend him for admission without a satisfactory evaluation or treatment for chemical dependency.

On March 30, 1984, the Board held a hearing to consider Haukebo's chemical dependency and moral character for purposes of recommending his admission to the bar. The Board considered the chemical dependency evaluations, two of which contained positive diagnoses for chemical dependency and the third of which refuted those diagnoses as mistaking personality and mental health factors for symptoms of alcoholism, but recommended Haukebo's admission to the bar with ongoing supervision. Haukebo appeared and testified at the hearing. Thereafter, the Board informed him that it had insufficient evidence to recommend him for admission as a person of good moral character. From that decision Haukebo appealed.

 Good moral character is a permissible prerequisite for admission to a state bar. *See* Annot., 64 A.L.R.2d 301, 304–14. Although good moral character has traditionally been defined as "absence of proven conduct or acts which have been historically considered as manifestations of 'moral turpitude,' "[1] the concept has gradually been expanded in the bar admissions context to include concern for "misconduct clearly inconsistent with the standards of a lawyer's calling." *Law Students Civil Rights Research Council v. Wadmond,*

401 U.S. 154, 159, 91 S.Ct. 720, 725, 27 L.Ed.2d 749 (1971); *see* Annot., 64 A.L.R.2d 301, 304. Because the practice of law is a right for all who are educationally and morally qualified for the profession, "a state cannot exclude a person from the practice of law * * * in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." *Schware v. Board of Law Examiners,* 353 U.S. 232, 238–9, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957); Special Project, *Admission to the Bar: A Constitutional Analysis,* 34 Vanderbilt L.Rev. 655, 666–96 (1981). The burden of establishing good moral character, however, is on the applicant. *In re H.H.S.,* 373 So.2d 890 (Fla.1979); *Nall v. Board of Bar Examiners,* 98 N.M. 172, 646 P.2d 1236 (1982).

 In judging an applicant's moral character, examiners typically look for patterns of conduct that may reflect on the individual's honesty, fairness or respect for the rights of others or for the laws of the state and nation. *See Konigsberg v. State Bar of California,* 353 U.S. 252, 263, 77 S.Ct. 722, 728, 1 L.Ed.2d 810 (1957); *Florida Board of Bar Examiners v. G.W.L.,* 364 So.2d 454, 458 (Fla.1978). Additionally, because the evaluation is to be made of the applicant's present moral character, any pattern of immoral behavior must be sufficiently continuous or current to permit a reasonable inference that similar conduct can currently occur or may likely occur in the future. *See In Re Dileo,* 307 So.2d 362 (La.1975), Annot., 88 A.L.R.3d 192, 203; Comment, *Good Moral Character and Admission to the Bar: A Constitutionally Invalid Standard?* 48 Cincinnati L.Rev. 876 (1979). Reformation from past immoral acts can be shown by a subsequent history of good behavior. *Application of Gimbel,* 271 Or. 671, 533 P.2d 810 (1975). Thus, in assessing moral character for purposes of bar admission, only those factors that have a rational connection with the applicant's present fitness or capacity to prac-

---

**1.** *Konigsberg v. State Bar of California,* 353 U.S. 252, 263, 77 S.Ct. 722, 728, 1 L.Ed.2d 810 (1957).

tice law can be considered. *See Hackin v. Lockwood,* 361 F.2d 499 (9th Cir.1966); *In re Griffiths,* 413 U.S. 717, 722–23, 93 S.Ct. 2851, 2855, 37 L.Ed.2d 910 (1973), and cases cited therein. *See also* Comment, *The Concept of Attorney Fitness in New York: New Perspectives,* 24 Buffalo L.Rev. 553, 563–66 (1975).

In the instant case, the Board of Law Examiners, in the conscientious performance of its screening function, has refused to recommend Haukebo as a person of good moral character because, on the evidence before it, it has determined him to be chemically dependent on alcohol. The Board is unpersuaded that he has recovered from that condition. Haukebo has consistently denied being dependent on alcohol throughout this extended application process, but his denial has been considered by some evaluators to be a symptom of chemical dependency. He denies the need for, and refuses, treatment. A primary question, then, is whether chemical dependency on alcohol is rationally related to fitness for the practice of law such that it can form the basis for preventing an otherwise qualified applicant from gaining admission to the bar.

■ Alcoholism, as it is known today, is the condition or status of being physically and/or emotionally dependent on alcohol. We have recognized alcoholism as a disease which can be controlled with treatment. *See Moeller v. Department of Transportation,* 281 N.W.2d 879, 882 (Minn.1979), and cases cited therein. It is not a mere pattern of voluntary conduct; neither is it an offense which necessarily involves moral turpitude or reflects on the individual's honesty, fairness, or respect for the rights of others or for the law. It cannot be denied, however, and the Board well knows, that the disease of alcoholism is frequently a contributing factor to acts of attorney misconduct. *See In re O'Hara,* 330 N.W.2d 863 (Minn.1983); *In re Murphy,* 325 N.W.2d 826 (Minn.1982); *In re Johnson,* 322 N.W.2d 616 (Minn.1982); *In re Nordstrom,* 287 N.W.2d 12 (Minn.1979); *In re Phillips,* 284 N.W.2d 400 (Minn.1979).

■ Good moral character is required of those entering the practice of law for "the protection of clients and the assurance of the orderly and efficient administration of justice." Special Project, *supra,* at 664. For this purpose of ensuring ethical professional behavior, should an applicant's moral character be judged solely on the basis of that applicant's status as an alcoholic? We think not. *See Konigsberg v. State Bar,* 353 U.S. at 267, 77 S.Ct. at 730 (the mere fact of membership in the Communist Party does not support an inference that a bar applicant lacks good moral character); *In re Kimball,* 33 N.Y.2d 586, 347 N.Y.S.2d 453, 301 N.E.2d 436 (1973) (an applicant's status as an avowed homosexual does not render him morally unfit for the practice of law); *Petition of Schaengold,* 83 Nev. 65, 422 P.2d 686 (1967) (an applicant cannot be denied admission to the bar on the ground of a history of mental illness). Rather, an applicant's moral character should be judged on the basis of that person's past and present pattern of conduct or behavior.

Such a behavioral approach has been used in other jurisdictions, to focus on a pattern of immoral conduct and to require that the applicant overcome the presumption that similar conduct will recur in the future. In *In re Willis,* 288 N.C. 1, 215 S.E.2d 771 (1975), for example, the court considered an applicant's conviction for driving while intoxicated in this light:

> While this offense of itself does not evince such a lack of good moral character as to deprive the applicant of a license to practice law, it does indicate a willful disregard for the very laws which he seeks to advocate on behalf of the public. Moreover, any character impugning implications which do arise from such conduct are compounded by his subsequent driving in violation of the restrictions placed on his driving privileges by the court for that offense * * *.

*Id.,* 215 S.E.2d at 781–82. Similarly, in *Bernstein v. Committee of Bar Examiners,* 69 Cal.2d 90, 70 Cal.Rptr. 106, 443 P.2d 570 (1968), and *Application of G.S.,* 291 Md. 182, 433 A.2d 1159 (1981), where bar

applicants who had committed past criminal acts attributed those misdeeds to temporary mental or psychological problems, the courts took a behavioral approach to the issue and in each case denied admission for lack of evidence showing that similar misdeeds would not occur in the future. *Cf. Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) (invalidating, on Eighth Amendment grounds, a California statute declaring as criminal not the actual *use* of illegal narcotics within the jurisdiction, but the very *status* of being a narcotics addict).

If Haukebo had been judged on his behavioral record, the Board might still have had some basis for questioning his moral character. Haukebo's three convictions for driving while intoxicated between 1979 and 1981 reflect behavior demonstrating an apparent disregard for the drunken driving laws. Had the Board focused on this pattern of behavior as its reason for questioning Haukebo's moral character, Haukebo would then have had the option of either submitting to chemical dependency evaluation to prove reform from past alcohol dependency or showing in some other way that he had acquired respect for the law in the time since his last offense and that his abuse of alcohol had ceased and was not likely to recur.

 Haukebo did testify that he has married and has changed his lifestyle and drinking habits since the time of the last offense, evidence tending to show reform from past immoral acts. It is not clear to us that the Board focused on Haukebo's pattern of behavior. The Board required particular proof by which Haukebo could show that he has overcome his past record and could establish his present good moral character. We hold that good moral character, for the purposes of bar admission, shall be determined from the applicant's pattern of conduct or behavioral record. An applicant, to overcome a finding of lack of good moral character by the Board, may submit any evidence reasonably tending to explain or show reform and rehabilitation from the acts or conduct upon which the negative moral character determination was based. We remand the matter to the Board of Law Examiners for reconsideration in light of this opinion and in light of any additional evidence by which Haukebo may seek to prove, either by compliance with the Board's recommendations or by sustained conduct over a period of time, that he is in fact rehabilitated and of good moral character.

Remanded for further proceedings.