(No. M.R. 3180.—

*In re* FREDERICK FRANCIS DeBARTOLO, Petitioner.

*Opinion filed January 23, 1986.*

Anthony J. Fornelli and Don Carrillo, of the Law Office of Anthony J. Fornelli, of Chicago, for petitioner.

Deborah M. Kennedy, for the Committee on Character and Fitness.

JUSTICE MILLER delivered the opinion of the court:

Following an investigation and hearing, the Committee on Character and Fitness for the First Judicial District refused to certify to the State Board of Law Examiners that the petitioner, Frederick Francis DeBartolo, possessed the good moral character and general fitness

necessary for the practice of law. He has filed in this court a petition for relief from the committee's refusal to certify his character and fitness (87 Ill. 2d R. 708(d)), and we now deny the petition.

The petitioner graduated from the John Marshall Law School in June 1981, and he passed the bar examination given in July of that year. More than a year later, in August 1982, the committee informed the petitioner that it had decided to refuse to certify that he possessed the requisite character and fitness for the practice of law. The petitioner requested a hearing on that decision, and he was supplied with a list of the specific matters that concerned the committee. (See *Willner v. Committee on Character and Fitness* (1963), 373 U.S. 96, 10 L. Ed. 2d 224, 83 S. Ct. 1175.) After hearing testimony, the committee voted to refuse to certify the petitioner's character and fitness; a written report of the committee's findings and conclusions was filed later. This petition followed.

As described in the committee's report, the sworn "Questionnaire and Statement of Applicant" submitted by the petitioner in applying for admission to the Illinois bar contained inaccurate information regarding his high school education and omitted a number of his residences. Moreover, the committee was disturbed that the petitioner had incurred some 200 to 400 parking tickets, as he had indicated on his application. Finally, the committee found that the petitioner twice had falsely represented himself to others as a police officer. Concluding that those matters raised questions regarding the petitioner's stability, integrity, and character, the committee refused to certify him for admission to the bar.

The committee based its determination on the petitioner's responses on his application and on the evidence that was introduced at the hearing. The matters in question may be considered briefly. The petitioner indicated

on his application that he had incurred between 200 and 400 parking tickets while in law school and that they either had been paid or contested successfully in court. At the hearing the petitioner discounted their significance: he believed that many of the tickets were unfairly given, as when he put money in the meter but received a ticket anyway, and he asserted too that the tickets provided an important source of revenue for the city and that the meters were patrolled zealously in the area where he normally parked.

On his application the petitioner gave inaccurate information concerning his high school education. On the application he said that he had attended St. Ignatius High School from 1970 to 1974; at the hearing he acknowledged, however, that he actually had attended a different high school, Proviso West, for a different period of time, 1971 to 1975. He offered no explanation for those discrepancies and attributed them to his haste and neglect in filling out the application.

The petitioner's application was deficient in another respect. On it he indicated that he had resided in Westchester, Illinois, at his parents' home for the preceding 10 years. He testified at the hearing, however, that he had lived at five different addresses in Chicago during the several years preceding his application, which apparently confirmed the committee's investigation of the matter. He occupied those places for only short periods, ranging from one day to eight months, and generally was not required to pay rent. The petitioner believed that the application called only for a list of domiciles, which in his case remained his parents' address at all times. We would note, however, that the petitioner used several of the other addresses in registering to vote and in applying for various official documents such as a driver's license, a firearm owner's identification card, a city of Chicago vehicle license, and a car registration. He

also used an address other than the one in Westchester in applying for a job with the Chicago police department.

Finally, the committee found that the petitioner had on at least two occasions misrepresented himself to others as a police officer. Chicago police officer Russell J. Luchtenburg, a college classmate of the petitioner, testified that one day at school sometime in 1977 he refused petitioner's request to borrow his badge and gun. According to Luchtenburg, the petitioner told him that he had left his own badge and gun at home and wanted to borrow Luchtenburg's so that he could arrest some persons whom he had seen smoking marijuana. At the hearing the petitioner denied the occurrence. Joseph Burke, who had investigated the petitioner's application for employment with the Chicago police department, testified that the petitioner admitted to him that he had falsely represented himself as a police officer once while in a tavern with friends. Although the petitioner contests the point, this evidence supports the committee's determination that the petitioner had in fact made the misrepresentations.

A number of persons, including relatives, lawyers, and friends, testified in the petitioner's behalf at the hearing; they attested to his integrity, stability, and overall fitness to practice law. The petitioner was employed as a commodities trader, and a co-worker described their responsibility in that capacity. At the time of the hearing the petitioner had no record of moving traffic violations or criminal convictions, nor had he been involved in any civil actions that would bring his general fitness into question.

An applicant for admission to the bar must show that he possesses the good moral character and general fitness necessary for the practice of law (*In re Ascher* (1980), 81 Ill. 2d 485), and the petitioner has failed to demonstrate that here. Remarkably, on his application he

provided incorrect information regarding his high school attendance, and he failed to list his numerous residences. An applicant for admission to the bar of this State must submit to the Committee on Character and Fitness "an affidavit in such form as the Board of Law Examiners shall prescribe concerning his history." (87 Ill. 2d R. 708(b).) The decisions of this court have emphasized the importance of candor and completeness in filling out the application; the failure to respond fully and accurately to the various questions betrays a lack of concern for the truth and, moreover, frustrates the committee in its examination of the applicant. (*In re Ascher* (1980), 81 Ill. 2d 485; *In re Martin-Trigona* (1973), 55 Ill. 2d 301; see *In re Jordan* (1985), 106 Ill. 2d 162 (disciplinary proceeding); *In re Mitan* (1979), 75 Ill. 2d 118 (disciplinary proceeding).) In other respects, too, the petitioner's conduct has been questionable. He has misrepresented himself as a police officer and has shown disregard for the law by amassing some 200 to 400 parking tickets over a short period of time.

Based on the record before us, then, we agree with the committee that the petitioner did not at that time demonstrate the good moral character and general fitness that are necessary to qualify him for admission to the bar of this State. The committee's decision to refuse to certify that the petitioner possessed those qualities is not, as he contends, harsh and unwarranted.

Although the committee's decision was appropriate, we do not believe that the petitioner's conduct here must necessarily bar him for life from the practice of law. Just as an attorney who has been disbarred, disbarred upon consent, or suspended until further order of the court may, after passage of the applicable period of time, seek reinstatement (see 94 Ill. 2d R. 767), by analogy the petitioner here should be allowed to reapply for admission, and he may do so at this time. Upon the petitioner's re-

application, the committee may consider all matters that are relevant to his moral character and general fitness to practice law, including his conduct since the hearing held here and his candor in filling out his new application and in responding to whatever inquiry the committee makes.

For the reasons indicated, the petition for admission to the bar of this State is denied.

*Petition denied.*