408 S.E.2d 675

**Gary Wayne FRASHER, Petitioner,**

v.

**WEST VIRGINIA BOARD OF LAW EXAMINERS, Respondent.**

**No. 20087.**

Supreme Court of Appeals of West Virginia.

Submitted May 7, 1991.

Decided July 29, 1991.

George A. Stolze, Huntington, for petitioner.

John Hedges, Charleston, for respondent.

WORKMAN, Justice:

This case is before the Court upon the appeal of the January 29, 1991, final decision of the Board of Law Examiners (hereinafter referred to as the Board) which found that the appellant, Gary Wayne Frasher, was not qualified to sit for the West Virginia bar examination.[1] The appellant alleges that: 1) the Board has

**1.** The appellant filed his exceptions with this Court on March 4, 1991, pursuant to Rule 6.0(d) of the Rules for Admission to the Practice of Law (hereinafter referred to as the Rules for Admission) which provides in pertinent part that

[i]n the event that the Board finds that the applicant is not eligible, the applicant may file exceptions to the Board's recommendations. Exceptions shall be filed with the Clerk of the Supreme Court of Appeals within thirty (30) days from the date of the receipt of the Board's written recommendation. If the Court determines that the matter has merit, it shall docket the case for full argument.

Even though the appellant captions his original petition as "Exceptions to the Board of Law Examiners' Denial of Application[;] Petition for Issuance of Writ of Mandamus or Injunctive Relief," it is clear upon a review of the proceeding in this matter that this case is only an appeal of the Board's final determination in this matter and that a petition for writ of mandamus is an inappropriate remedy.

committed a constitutional [2] error involving a denial of equal protection to the appellant with respect to his liberty interest and substantial property right in a license to practice law by denying his application; and 2) the Board erred in failing to find the appellant morally, ethically, and mentally fit to practice law based upon all the evidence in the record. Based upon our review of the record in this matter, the petition and the briefs and arguments, we find that no error was committed by the Board and we therefore affirm the Board's decision.

This case originated in February 1990, when the appellant made inquiries to the Board through its Executive Secretary Loretta Ecker concerning the impact of his traffic offense history on an application to the West Virginia Bar. The appellant was forthright in disclosing that he had three driving under the influence (hereinafter referred to as DUI) convictions dated October 24, 1976, July 26, 1987, and May 22, 1988.[3] He also has twenty-five arrests for speeding, with twenty-four resulting in convictions; five other traffic arrests, including two careless driving charges resulting in one conviction; one reckless driving arrest which did not result in a conviction; and two other unspecified moving violations arrests with two convictions.[4]

Ms. Ecker, after conducting a telephone poll of various Board members, informed the appellant that his traffic offense history might present licensing problems. The appellant, however, proceeded to submit his application for admission to the bar examination on March 29, 1990.

On April 9, 1990, the appellant was formally informed by letter from the Board that it had denied his request for admission to the bar examination. While a copy of this letter is in the record, the appellant does not acknowledge receiving it, but rather indicates that he was informed of the denial in a telephone inquiry to Ms. Ecker. According to the appellant, Ms. Ecker told him that the Board had voted four to three to deny his application and that the reason for the denial was his "criminal history."

The record then indicates that on May 11, 1990, the appellant resubmitted his original application to the Board and supplemented it with several letters of recommendation and the report of a psychologist who worked with the appellant under his court-ordered counseling for a DUI conviction. Additionally, on May 11, 1990, the appellant requested to meet with the Board at its annual meeting on June 20, 1990.

On May 17, 1990, the appellant was notified by the Board that he had been granted a meeting with the Board on June 20, 1990. On that date, the appellant met with six members of the Board. During the meeting, he addressed questions by the Board regarding his DUI convictions and funds that he had apparently depleted which belonged to his minor daughter.[5] Both of

---

**2.** The appellant's petition originally contained a due process claim asserting that if this Court reaches the merits of the appeal, the due process claim would be rendered moot. Upon this Court's review of the record in this case, we find that the Board complied with the proper procedures set forth in the Rules for Admission including proper notice and a hearing. Therefore we conclude that the appellant's claim of error with regard to due process is without merit. *See generally, Willner v. Committee on Character and Fitness*, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963).

**3.** One of these DUI convictions involved a traffic accident. Further, the two more recent offenses occurred within a ten-month period immediately prior to and following the appellant's first year of law school.

**4.** In addition, the appellant updated his application as recently as July 2, 1991, with yet another speeding conviction which occurred in June

1991. The traffic arrest took place in Wayne County, West Virginia, when the appellant was stopped for travelling 67 miles per hour in a 55 miles per hour zone.

**5.** According to the record in this case, both the appellant and his wife depleted some $3,221.00 in funds from a trust account of the appellant's adopted daughter. The appellant testified that he succumbed to pressure applied by his former wife in agreeing to use the funds. His testimony was that his former wife convinced him that the use of the funds was for the indirect benefit of the child. He indicated that the money was used to build and furnish a home, and to pay for the child's orthodontic work and parochial school. The appellant also testified that it was incorrect for him and his former wife to use the funds in the manner in which they did. As part of the separation agreement between the appellant and his wife, each agreed to reimburse the sum of $1,610.50, respectively, to the trust fund.

these areas of inquiry had been previously disclosed by the appellant to the Board in his application pursuant to Rule 4.3 of the Rules for Admission. After this meeting, the Board requested that the appellant submit a report from Dr. Tom Yock, a psychologist with the University of Colorado Health Center, with whom the appellant had consulted on several occasions during the latter part of his final semester in law school. The appellant complied with this request. However, on September 11, 1990, he was informed by the Board that his application for admission to the bar examination had once again been denied.[6] Subsequently, at the appellant's request, the Board elaborated on the reasons for the denial of his application, citing concerns about the appellant's "character and fitness arising from his extensive criminal record."

On October 11, 1990, the appellant requested a hearing on the Board's determination pursuant to Rule 6.0(a) of the Rules for Admission. The Board granted this request, appointing a hearing officer and providing notice of the hearing to the appellant.

An administrative hearing was conducted before John R. Fowler, the Board-appointed hearing officer, on November 7, 1990. At the hearing, the appellant, in compliance with his continuing obligation to update information in his application as set forth in Rule 5.2(e) of the Rules for Admission, supplemented his application with two additional speeding convictions in Colorado which occurred in July and October of 1990. The hearing officer did take testimony from the appellant with regard to his drinking problem, his traffic offense record and the depletion of the child's funds.

On January 3, 1991, the hearing officer filed his written recommendation as to the eligibility of the appellant and found that he had not met the burden of proving his fitness to practice law. The hearing officer stated that the appellant's "history of repeated offenses demonstrates a pattern of questionable stability and suggests alcohol abuse." The hearing officer also indicated concern over the fact that the appellant acknowledged that he had abused alcohol on an occasional basis in the past,[7] and in his application of March 29, 1990, indicated his abstinence to the Board, and yet testified at the hearing that he had resumed drinking. This recommended decision by the hearing officer was followed by the Board in a letter to the appellant dated January 29, 1991.

## EQUAL PROTECTION

■ The first issue before this Court is whether the appellant was denied equal protection[8] of the law by the Board. The appellant asserts that the denial of his application to sit for the bar examination upon the grounds of character and fitness was premised upon improper class distinctions made between the appellant (and those similarly situated as first-time applicants), and those who were either already licensed to practice law or those seeking

---

The appellant testified at his hearing that he had repaid approximately $2,600.00 to the trust account, which sum included interest.

6. It is important to note that Frasher took and passed the Colorado bar examination in July 1990. In September 1990, he was informed that his application was being reviewed on character grounds and in October 1990 he met with an Inquiry Panel of the Colorado Board of Law Examiners. The panel found probable cause to deny a license to practice law to the appellant based upon his DUI and speeding convictions. The Colorado Board requested that Frasher submit to an alcohol/drug evaluation and psychiatric evaluation, which the appellant has done. The appellant indicated that it was his belief that he would have a formal hearing before a hearing panel in August 1991.

7. While the appellant acknowledged throughout that he had abused alcohol in the past, it was his opinion that his problem was in remission. He only recently recognized that his alcohol dependency is a current problem. This recognition came after he was diagnosed as suffering from alcohol dependency by psychiatrist D.H. Webb III, M.D., of Huntington, West Virginia, who examined the appellant to satisfy a request made by the Colorado Board of Law Examiners.

8. The fourteenth amendment to the United States Constitution provides in pertinent part: "nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

reinstatement to practice law following a revocation period. The appellant argues that "[t]he distinction is improper in that the purpose and intent of legislation and rules promulgated respecting character and fitness is the protection of the public from unqualified and immoral practioners [sic] of law"; and that since both classes of individuals presumably contain unqualified and immoral individuals, there is no rational basis for applying different standards to them. The appellant finally asserts that it is particularly invidious that one who has not committed ethical violations by past specific incidents of misconduct is subjected to more stringent regulation than those who have previously committed ethical violations or who are in a position to do so. The appellee contends that no violation of equal protection principles occurred, since legitimate differences exist between admissions proceedings and disbarment proceedings.

It is important to note that there is nothing in the record to support the appellant's contention that an attorney already admitted to practice would not be subject to disciplinary action for this same conduct. *See* article 6, sections 2, 23, 24 and 25 of the By-laws of the West Virginia State Bar. However, for the sake of the discussion on the equal protection argument, we will assume the appellant's contention that a higher standard of conduct is required for new applicants.

In addressing whether the requirement of a higher standard of good moral character for bar applicants is violative of the equal protection clause, we turn to our prior decision in *Israel ex rel. Israel v. West Virginia Secondary Schools Activities Comm'n*, 182 W.Va. 454, 388 S.E.2d 480 (1989) where we held that "[e]qual protection of the law is implicated when a classification treats similarly situated persons in a disadvantageous manner." Syl. Pt. 2, in part, *Israel*, 182 W.Va. at 455, 388 S.E.2d at 481. Consequently, if it is determined that bar applicants are not similarly situated with attorneys already admitted to practice, then a different standard, such as a higher standard of good moral character,

may be imposed by the state upon the applicant before he is admitted to the bar.

In reaching a determination on this issue, it is helpful to examine the decision of the Seventh Circuit Court of Appeals in *Martin–Trigona v. Underwood*, 529 F.2d 33 (7th 1975), a case analogous to the case at bar. The court in *Martin–Trigona* found that requiring applicants to prove good moral character does not offend the equal protection clause. *Id.* at 36. In that case, the appellant maintained that bar applicants should be afforded the same rights as admitted attorneys who faced disciplinary action. The Seventh Circuit disagreed stating that

[a]s to appellant's argument that bar applicants should be entitled to the identical rights that are afforded to admitted attorneys, ... our review of the record herein fails to reveal that the procedure utilized by the committee in denying appellant's application for admission could be said to have deprived him of equal protection of the law. The Supreme Court of Illinois has made it perfectly unambiguous, in its review of the process relative to bar application cases, that matters of fitness for bar admission and matters involving disciplinary actions against attorneys involve completely dissimilar procedures and are governed by a different set of rules and regulations, mainly because of the distinguishable nature of the two proceedings.... [W]e cannot agree with appellant's contention that he has been denied equal protection. As has been stated, '[t]he Constitution does not require things which are different in fact ... to be treated in law as though they were the same.' *Tigner v. Texas*, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124 (1940). 'Hence, legislation may impose special burdens upon defined classes in order to achieve permissible ends' as long as "the distinctions that are drawn have 'some relevance to the purpose for which the classification is made.'" *Rinaldi v. Yeager*, 384 U.S. 305, 309, 86 S.Ct. 1497, 1500, 16 L.Ed.2d 577 (1966). We are of the firm conviction that in defining that class of persons subject to

the procedures for admission to the bar, the distinctions that have been drawn herein do indeed have "some relevance to the purpose for which the classification is made," and that purpose is to insure that only those applicants who are fit to practice law are granted entrance into the profession in order that high professional standards may be maintained.

*Martin–Trigona*, 529 F.2d at 35–36 (some citations omitted); *see In re Florida Bd. of Bar Examiners*, 373 So.2d 890 (Fla.1979) (court recognized that same standard of fitness and character does not apply in proceedings where one seeks admission to Bar as opposed to attorney disciplinary proceedings); *see generally In re Florida Bd. of Bar Examiners*, 358 So.2d 7 (Fla.1978); *Lucius v. State Bd. of Bar Examiners*, 84 N.M. 382, 503 P.2d 1160 (1972).

In the present case, legitimate differences exist between bar applicants and those already admitted to the bar, and accordingly, these two groups are not similarly situated. Those already admitted to practice have met the character qualifications, have proven their knowledge and fitness to practice law, and accordingly, are governed by a different set of rules than bar applicants. For instance, attorneys already admitted to practice must practice law in conformity with the Rules of Professional Conduct, while bar applicants must comply with the Rules for Admission, with the exception of Rule 8.1 of the Rules of Professional Conduct which is the only Rule of Professional Conduct which specifically applies to bar applicants. Another difference which distinguishes the two groups is that an attorney facing disciplinary proceedings is generally dealing with definite charges lodged against him further requiring the different set of rules in dealing with those specific charges where the bar applicant is only trying to prove his fitness for admission. *See* Constitution, By–Laws and Rules and Regulations of the West Virginia State Bar; *but cf.* Rules for Admission. Denial of admission to the bar exam is simply not equivalent to an attorney who either faces disciplinary action or reinstatement.

Since a bar applicant is not similarly situated with an attorney already admitted to practice, a higher standard of good moral character may be applied so long as there is "a rational connection with the applicant's fitness or capacity to practice law." *Schware v. Board of Bar Examiners*, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957). The rational connection is to insure that only those applicants who are fit to practice law are granted entrance into the profession so that high professional standards are maintained.

## SUFFICIENCY OF EVIDENCE

■ Next, the appellant complains that the Board improperly denied his application on the basis of "unsubstantiated assumptions" of chronic alcohol abuse, minor traffic violations, and DUI convictions which do not rise to the level of moral turpitude sufficient to result in a denial. Further, the appellant asserts that he has presented the Board with a prima facie case of good moral character sufficient for admission and that the Board has failed to rebut the evidence except through speculation. The appellee, on the other hand, argues that in light of the appellant's alcohol-related offenses and additional history of repeat offenses, the Board was justified in denying the appellant's application for admission since, according to the appellee, there has been no clear and sustained demonstration that the appellant is currently possessed of a good moral character and is mentally and emotionally stable.

In *Pushinsky v. West Virginia Bd. of Law Examiners*, 164 W.Va. 736, 266 S.E.2d 444 (1980) this Court discussed at length the reasons the state has a legitimate interest in guaranteeing the good moral character of a prospective attorney. 164 W.Va. at 746, 266 S.E.2d at 449–50. The legitimate interest articulated was that

'admission to membership in the legal profession is a privilege granted in the interest of the public to those who are morally fit and mentally qualified for the sole purpose of protecting the unwary and the ignorant from injury at the

hands of persons unskilled or unlearned in the law.'

*Id.* 164 W.Va. at 746, 266 S.E.2d at 450 (quoting *West Virginia State Bar v. Earley,* 144 W.Va. 504, 528, 109 S.E.2d 420, 435 (1959)). Therefore, "[i]n order to be eligible for admission [to the practice of law in the State of West Virginia], the applicant must show that he or she is possessed of good moral character and is mentally and emotionally stable." Rule 4.2(b) of the Rules for Admission. Additionally, in *Pushinsky,* this Court held that placement on the applicant of the affirmative burden of proving good moral character is proper. 164 W.Va. at 746, 266 S.E.2d at 450.

The appellant argues that since his past conduct does not involve moral turpitude, the Board's decision to deny his application on the basis of his failure to prove his good moral character is in error. However, as recognized by the United States Supreme Court in *Konigsberg v. State Bar of California,* 353 U.S. 252, 262–63, 77 S.Ct. 722, 727–28, 1 L.Ed.2d 810 (1957), the term "good moral character" can be defined "in an almost unlimited number of ways...." Since no absolute definition exists, we refuse to restrict the term to conduct solely evincing moral turpitude. To place such a limitation on what constitutes "good moral character" would cause us to thwart our responsibility to protect the public. *See Florida Bd. of Bar Examiners v. G.W.L.,* 364 So.2d 454, 458 (Fla.1978); *see also* Syl. Pt. 1, *Committee on Legal Ethics v. Roark,* 181 W.Va. 260, 382 S.E.2d 313 (1989) (attorney convicted of crime not involving moral turpitude can still be suspended from practice of law).

For instance, the Supreme Court of Florida found in *Florida Bd. of Bar Examiners* that an applicant's act of exercising the legal right to secure a discharge in bankruptcy of his debts to creditors who had substantially funded him for seven years of educational training well before his first installments on those debts came due indicated a "course of conduct in these personal affairs [which] raises serious questions concerning the propriety of his being a counselor to others in their legal affairs, and is rationally connected to his fitness to practice law." 364 So.2d at 459. The Flor-

ida court based its decision on its conclusion that

> [t]he inquiry into good moral character which emphasizes honesty, fairness, and respect for the rights of others and for the laws of this state and nation is a proper and suitable standard for those who desire to be an integral part of the administration of justice in the courts of this state.

*Id.* at 458.

Other jurisdictions have similarly determined that good moral character is not limited solely to that conduct which constitutes moral turpitude. In *In re Willis,* 288 N.C. 1, 215 S.E.2d 771, *appeal dismissed,* 423 U.S. 976, 96 S.Ct. 389, 46 L.Ed.2d 300 (1975) the Supreme Court of North Carolina considered the Board of Examiners' denial of the applicant's request for admission to the North Carolina Bar based in part upon his prior DUI convictions. The court held that "[w]hile this offense of itself does not evince such a lack of good moral character as to deprive the applicant of a license to practice law, it does indicate a willful disregard for the very law which he seeks to advocate on behalf of the public." 215 S.E.2d at 781–82; *see In re Cason,* 249 Ga. 806, 294 S.E.2d 520 (1982) (failure to prove rehabilitation following conviction on nonfelony charges including shoplifting, assault and simple battery during ten-year period precludes certification of fitness to practice law); *In re DeBartolo,* 111 Ill.2d 1, 94 Ill.Dec. 700, 488 N.E.2d 947 (1986) (applicant for admission to Illinois bar does not have good moral character and general fitness to practice law where individual has misrepresented himself as police officer and has amassed between 200 and 400 parking tickets during law school).

Finally, in a case factually analogous to the present case, the Minnesota Supreme Court in *In re Haukebo,* 352 N.W.2d 752 (Minn.1984) considered whether the State Board of Law Examiners' denial of petitioner's application to the bar based upon a finding of a lack of good moral character was proper. In that case, the Minnesota Board denied the application based upon

the applicant's three convictions for DUI and a determination by the Board that the applicant was chemically dependent on alcohol. 352 N.W.2d at 753–54.

The court determined that being chemically dependent on alcohol

> is not a mere pattern of voluntary conduct; neither is it an offense which necessarily involves moral turpitude or reflects on the individual's honesty, fairness, or respect for the rights of others or for the law. It cannot be denied, however, and the Board well knows, that the disease of alcoholism is frequently a contributing factor to acts of attorney misconduct.

*Id.* at 755. The court stated further that judgment on an applicant's moral character should not be made solely on the basis of his alcoholism, but "[r]ather, an applicant's moral character should be judged on the basis of that person's past and present pattern of conduct or behavior." *Id.* Thus, the Supreme Court of Minnesota held that

> good moral character, for the purposes of bar admission, shall be determined from the applicant's pattern of conduct or behavioral record. An applicant, to overcome a finding of lack of good moral character by the Board, may submit any evidence reasonably tending to explain or show reform and rehabilitation from the acts or conduct upon which the negative moral character determination was based.

*Id.* at 756.

Accordingly, we agree with the Minnesota Supreme Court in *In re Haukebo*, that

alcohol dependency, although it does not necessarily involve moral turpitude, is often a contributing factor to acts of attorney misconduct. *See id.* at 755. Therefore, we hold that since alcohol dependency can impact on an applicant's fitness to practice law, it is an appropriate factor to be considered by the Board of Law Examiners in ascertaining whether an applicant has proven good moral character sufficient to demonstrate his fitness and capacity to practice law in this State.

■ In the present case, the appellant's pattern of conduct, including three DUI convictions and an extensive traffic offense record, obviously led the Board to the inescapable conclusion that the appellant has a problem with alcohol dependency. This is apparent in the hearing examiner's conclusion that

> Mr. Fraser [sic] has failed to meet his burden of proving that he is fit for the practice of law. This burden is one the applicant bears. The applicant's history of repeated offenses demonstrates a pattern of questionable stability and suggests alcohol abuse. Especially bothersome is the acknowledgement in applicant's reply brief of alcoholism,[9] yet an admission in testimony that applicant is again drinking.[10] Applicant had previously cited a period of six months abstinence in his letter to the Board of March 29, 1990, which was part of his application, as indicative of rehabilitation.[11] (citations omitted)

The report by D.H. Webb, III, M.D. substantiated this conclusion. Dr. Webb, who

9. The hearing examiner was referring to a document entitled "Memorandum of Law" submitted on behalf of Frasher, after he testified before the hearing examiner, in which the following statement was made: "This applicant submits that his prior driving record is no reflection whatsoever upon his character, but understands the reservation of the Board concerning his fitness to practice law because of his history of some substance abuse.... The applicant has shown his illness to be in remission."

10. The appellant's testimony before the hearing examiner indicated that "I no longer drink excessively or drink and drive in an impaired

state", but continued to drink "[o]n occasional, light, social basis, and I would like to emphasize the term 'light.' For example, within the last seven to ten days, I've consumed no alcohol."

11. Specifically, the appellant in a letter to the Board stated that

> [s]ince my arrest in May 1988 in Colorado, I have learned to cope with my personal circumstances and I have not abused alcohol since that time nor have I operated a vehicle in an impaired state. I no longer drink and drive with any amount of alcohol in my system, nor will I ever do so again. In fact, I have not consumed any alcohol at all in the past six months.

evaluated the appellant pursuant to the request of the Colorado Board of Law Examiners indicated the following:

> To summarize, this man meets diagnostic criteria of alcohol dependence, in partial remission. He appears to be in denial about this, insofar that he has developed well entrenched defensive mechanisms, primarily rationalization, minimization, projection and intellectualization, that render him incapable of realizing the severity and intensity of his pathological relationship with alcohol.
>
> The traits of his personality disorder [12] only serve to exacerbate his highly developed ability to emotionally and intellectually exonerate himself of this disease....

Furthermore, by the appellant's own admission, he has not participated in any program of therapy or rehabilitation.[13] Alcoholism or alcohol dependency is generally recognized as a disease which requires treatment or some form of therapy. *See* R. Fishman, *The Encyclopedia of Psychoactive Drugs: Alcohol and Alcoholism*, at 78–80 (1986); J. Milam & K. Ketcham, Forward to M. Schalstad, *Under the Influence: A Guide to the Myths and Realities of Alcoholism*, at 106–08 (1981); G. Vailant, *The Natural History of Alcoholism*, at 295–305 (1983).

## REHABILITATION

■ While we have not previously addressed rehabilitation in the context of first-time applicants to the bar, we have addressed it in the context of attorney disciplinary proceedings.

In *In re Smith*, 166 W.Va. 22, 270 S.E.2d 768 (1980) we considered whether a disbarred attorney who had previously been convicted of conspiring to cause fraudulent and illegal votes to be cast in a primary election should be reinstated to the bar. This Court held that

> [i]n a proceeding for reinstatement of an attorney's license after annulment general testimony that the petitioner either is or is not of good moral character is entitled to little weight. Where the petitioner shows a record of honorable behavior since disbarment, and the correction of or recovery from any identifiable vices or illnesses, the petitioner's burden has been met and the burden is then upon the Committee on Legal Ethics, if they wish to contest reinstatement, to present facts and circumstances which would lead to an inference of bad character or lack of fitness to practice law.

166 W.Va. at 22–23, 270 S.E.2d at 769, Syl. Pt. 3.

Thus, in *In re Smith* we found that the petitioner should be reinstated based upon the evidence presented which included not practicing law for six years and the petitioner leading a "correct and upright life without blemish from the time of his disbarment until application for reinstatement." *Id.* 166 W.Va. at 30, 270 at 773. We said there in dicta that "if a lawyer were disbarred for gross negligence which resulted from chronic alcoholism, it would then be necessary to show that the lawyer has abjured liquor and at the time of the petition has a reasonable history of abstinence" prior to being reinstated to the bar. *Id.*

Moreover, in syllabus point 2 of *In re Brown*, 166 W.Va. 226, 273 S.E.2d 567 (1980) we held that "[r]ehabilitation is demonstrated by a course of conduct that enables the court to conclude there is little likelihood that after such rehabilitation is completed and the applicant is readmitted to the practice of law he will engage in unprofessional conduct."

---

12. Appellant was diagnosed as suffering from a "personality disorder nor otherwise classified (traits of narcissistic, histrionic and aggressive personality disorders)".

13. The applicant testified that while he had attended one Alcoholics Anonymous meeting, "I don't feel that would be a helpful approach for me. I think it does a lot of good for a lot of people. I think as long as there is no excessive alcohol consumption in my life, it's not a form of treatment I need."

Consequently, based upon these principles previously enunciated, where an applicant is denied admission to the bar of this State due to the Board's finding that the applicant has failed to prove his good moral character, the applicant may thereafter resubmit his application, offering proof to the Board that he has rehabilitated his character by demonstrating a course of conduct that enables the Board to conclude that there is little likelihood that the applicant will again engage in the pattern of conduct or behavior that led to the Board's denial. The passage of time alone is not sufficient evidence to meet the applicant's burden of proof in demonstrating rehabilitation to the Board.

■ The appellant has indicated in his reply brief that, since the psychiatrist made the diagnosis of alcohol dependence and possible personality disorder, he "has followed the recommendations of abstinence from alocohol [sic] and attendance at AA meetings." However, it was not until after the Board made its final decision in this matter that the appellant began to attend Alcoholics Anonymous meetings and, according to an affidavit submitted to this Court, the appellant has only abstained from alcohol since March 24, 1991. While this is some evidence that the appellant has begun the road to recovery, it is certainly not sufficient evidence which would warrant a finding of rehabilitation at this time.

Based upon the foregoing, the decision of the Board of Law Examiners is affirmed.

Affirmed.