Terry Ronald SMITH  *v.*  STATE BOARD of LAW EXAMINERS

03–1308                                    187 S.W.3d 842

Supreme Court of Arkansas
Opinion delivered June 10, 2004

*Gary Eubanks and Associates,* by: *Russell D. Marlin,* for appellant.

*W. Frank Morledge, P.A.,* for appellee.

BETTY C. DICKEY, Chief Justice. Terry Smith appeals the decision of the Arkansas Board of Law Examiners denying his request for admission to the Bar of Arkansas. He raises two points on appeal: (1) he has proven his rehabilitation and his fitness for the practice of law, and (2) the Board of Law Examiners erred in refusing to allow him to participate in the deferred admissions program. We affirm the Board's decision denying admission.

Appellant Smith was granted a license to practice medicine in Arkansas in 1980. Prior to 1996, Smith began to abuse alcohol and began taking Demerol. On or about February 7, 1996, he was caught taking unauthorized control over Demerol from the White County Medical Center. At that point, appellant voluntarily entered a rehabilitation faculty, COPAC in Mississippi, for alcohol and drug usage. On July 11, 1996, the Arkansas State Medical Board issued an emergency order suspending appellant's license to practice medicine. On September 14, 1996, the Arkansas Medical Board unanimously found that Smith violated the Medical Practices Act, the laws of the United States and the State of Arkansas governing the possession, distribution and use of narcotics, and reinstated appellant conditioned on probation of five (5) years, including a five (5) year contract for monitoring and care with the Physician's Health Committee.

Later in 1996, appellant resumed his medical practice, but failed to make the necessary changes to maintain rehabilitation, such as participation in a twelve-step support program. On January 4, 1998, Smith tested positive for Meperidine, Fentanyl, and opiates, in violation of his contract with the Arkansas Medical Foundation. Appellant then entered another alcohol and drug treatment program at Talbotts in Georgia. The Arkansas State Medical Board revoked Smith's medical license, but stayed the revocation for a period of five (5) years on various terms and conditions, such as participation in the Physician's Health Committee Program and abstention from alcohol and drugs.

Following a second attempt at rehabilitation, Smith decided to change direction in his professional life and enrolled in law school, graduating from the University of Arkansas at Little Rock

in December 2002. During this time, he failed to participate in the Physician's Health Committee Program, and, on February 2, 2001, the Arkansas State Medical Board accepted his offer not to renew his Arkansas medical license.

While in law school, Smith was arrested for DWI on September 11, 1999, and convicted of that charge on October 7, 1999. On January 16, 2002, he was involved in an automobile accident, resulting in an arrest for DWI II, and a conviction on February 16, 2002.

On November 6, 2002, Smith filed a character questionnaire and supporting documents seeking admission to the Bar of Arkansas. The Executive Secretary of the State Board of Law Examiners reviewed Smith's application and questioned his eligibility, but allowed him to take the Bar Exam subject to a continuing character and fitness investigation. When Smith passed the Bar Exam in February 2003, his Bar application was sent to the Chairman of the Board of Law Examiners, who decided that an evidentiary hearing should be conducted to determine if Smith was eligible for the Deferred Admission Program. Following the hearing, the Board voted seven to three that Smith was not a candiate for deferred admission and further denied his admission to the Bar, finding that Smith was not fully rehabilitated and that a longer period of sobriety was necessary.

■ Smith first argues that he has proven his rehabilitation and his fitness for the practice of law. We review bar admission and reinstatement cases *de novo* and will not reverse the findings of fact of the Law Examiners unless they are clearly erroneous. *In Re Application of Crossley,*310 Ark. 435, 839 S.W.2d 1 (1992); *In Re Petition for Reinstatement of Lee,* 305 Ark. 196, 806 S.W.2d 382 (1991); *Scales v. State Board of Law Examiners,* 282 Ark. 578, 669 S.W.2d 895 (1984). A *de novo* review of the record determines whether the factual findings were clearly erroneous or whether the results reached were arbitrary or groundless. *Lwellen v. Supreme Court Comm. on Professional Conduct,* 353 Ark. 641, 110 S.W.3d 263 (2003). Clear error exists when, although there is evidence to support the decision under review, the reviewing court is left with a definite and firm conviction that mistake has been committed. *Neal v. Matthews,* 342 Ark. 566, 30 S.W.3d 92 (2000).

■ A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the

Fourteenth Amendment. *Schware v. Board of Bar Examiners,* 353 U.S. 232 (1957). A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law. *Douglas v. Noble,* 261 U.S. 165 (1923).

█ █ In *In Re Application of Crossley,*310 Ark. 435, 839 S.W.2d 1 (1992), this court recognized chemical addiction is a disease, and in terms of the good moral character and mental and emotional stability required for admission to practice law, noted that addiction raises the question of fitness as opposed to moral turpitude. This court continued, saying "[u]nhappily, though, that conclusion on our part does not decide the matter, for our ultimate purpose in resolving admission questions is to assess an applicant's fitness to practice law and to protect the public's interest." *Crossley,* 310 Ark. at 441.

█ There is no doubt, however, that chemical dependency is a factor to be weighed in assessing fitness to practice law. *Id.* The Supreme Court of Minnesota has specifically addressed the question of whether chemical dependency on alcohol is rationally related to fitness for the practice of law such that it can form the basis for preventing an otherwise qualified applicant from gaining admission to the bar. *In Re Haukebo,* 352 N.W.2d 752, 755 (Minn. 1984). That court recognized alcoholism as a disease and acknowledged its impact on the practice of law, concluding that the matter should be remanded to the State Board of Law Examiners for a decision on whether the applicant was rehabilitated. In doing so, the court commented on alcoholism:

> It is not a mere pattern of voluntary conduct; neither is it an offense which necessarily involves moral turpitude or reflects on the individual's honesty, fairness, or respect for the rights of others or for the law. It cannot be denied, however, and the Board well knows, that the disease of alcoholism is frequently a contributing factor to acts of attorney misconduct.

█ "In our own cases dealing with petitions for reinstatement to practice law, this court has adopted a case-by-case analysis in dealing with the moral character question. Rather than defining what 'good moral character' is, we have cited examples of what it is not." *Crossley,* 310 Ark. at 443. In *Crossley,* this court noted that

we have not confronted the issue of whether chemical dependency involving the use of illegal drugs disqualifies one from practicing law. This court agreed, however, that rather than moral turpitude, the issue surrounding chemical dependency is one of fitness to practice law. *Id.*

■ As asked in *Crossley*, what must Smith show to establish rehabilitation? *Crossley* said: "[c]ertainly, an extended passage of time during which sobriety has been attained is a critical factor." *Crossley*, 310 Ark. at 444. Here, the record before the court outlines the justification for affirming the Board.

- At some point prior to 1996, Smith began to abuse alcohol and began taking Demerol.

- On or about February 7, 1996, he was caught taking unauthorized control over Demerol from the White County Medical Center. At this point, appellant voluntarily entered a rehabilitation faculty, COPAC in Mississippi, for alcohol and drug usage.

- On July 11, 1996, the Arkansas State Medical Board issued an emergency order suspending appellant's license to practice medicine.

- On September 14, 1996, the Arkansas Medical Board unanimously found that Smith violated the Medical Practices Act, the laws of the United States and the State of Arkansas governing the possession, distribution and use of narcotics, and reinstated appellant conditioned on probation of five (5) years, including a five (5) year contract for monitoring and care with the Physician's Health Committee.

- Sometime in 1996, appellant resumed his medical practice, but failed to make the necessary changes to maintain rehabilitation, such as active and true participation in a twelve-step support program.

- On January 4, 1998, Smith tested positive for Meperidine, Fentanyl, and opiates, in violation of his contract with the Arkansas Medical Foundation. Again, appellant entered another alcohol and drug treatment program at Talbotts in Georgia. The Arkansas State Medical Board revoked Smith's medical license, but stayed the revocation for a period of five (5) years on various terms and conditions, such as participation in the Physician's Health Committee Program and abstention from alcohol and drugs.

- Following the second rehabilitation stay, Smith "decided to change directions in his professional life so he applied and was accepted to law school." Appellant graduated from the University of Arkansas at Little Rock in December 2002. During this time, he failed to participate in the Physician's Health Committee Program.

- While in law school, appellant was arrested for DWI on September 11, 1999, and convicted of that charge on October 7, 1999.

- On January 16, 2002, Smith was involved in an automobile accident, and as a result was arrested for DWI II. Appellant was convicted on that offense on February 16, 2002.

Based on Smith's pattern of alcohol and drug abuse and his relapses every eighteen months to two years, we cannot say that the findings of the Board that Smith was not fully rehabilitated and that he needed more time of sobriety are clearly erroneous. The denial of the application for admission to the Bar is affirmed without prejudice so that Terry Smith may reapply after a longer period of sustained sobriety. "That is not to say that we shall forever remain unconvinced of reformation. Experience teaches that true reformation does occur. With the passage of time, this applicant may mature; his insight may develop; he may be able to show that good moral character requisite to admission to the Bar." *Crossley,* 310 Ark. at 445 (quoting *Application of Taylor,* 647 P.2d at 467–468).

For his second point on appeal, Smith argues that the Board erred in refusing to allow him to participate in the deferred admissions program. He says no specific reasons were given for declaring that [he] has not yet been rehabilitated, only that he had failed to establish rehabilitation by a preponderance of the evidence. Smith argues that, other than references to his substance abuse history, the findings do not describe what factors were used in reaching that determination.

Rule XIII of the Rules Governing Admission to the Bar states in part:

> The circumstances which might warrant such a deferral are: an applicant currently has a condition or impairment resulting from alcohol or other chemical or substance abuse which currently adversely affects the applicant's ability to practice law in a competent and professional manner.

Smith argues that, "should the Board's ruling stand, [he] will be forced to wait some indeterminate amount of time (without any guidance

from the Board whatsoever) and then reapply, retake the Bar Exam and presumably go through the hearing process once more." As appellant points out, no one in this proceeding is challenging his intellectual or academic capabilities.

█ The Board recognized that Smith had previously been given opportunities not dissimilar to those offered by the deferred admission program. The probation granted by the September 27, 1996, order of the State Medical Board granted appellant the same type of assistance program contemplated by Rule XIII of the Rules Governing Admission to the Bar. However, less than one and one-half years into that five year probation period, Smith tested positive for controlled substances. Again, in June 1998, Smith tested positive for controlled substances and the State Medical Board revoked his license, but stayed that revocation on the condition he participate in the Physician's Health Committee Program. Then, in 1999, appellant was arrested and convicted with his first of two DWI's while attending law school.

Based on Smith's prior performance under like programs offered and administered by the Arkansas State Medical Broad, Smith did not establish rehabilitation by a preponderance of the evidence; therefore, the Board is affirmed.