*In re* FERNANDO A. VILLAMIL HIGUERA, querellado.

*Número:* O-73-313      *Resuelto:* 31 de octubre de 1975

*Miriam Naveira de Rodón, Procuradora General, Peter Ortiz* y *Américo Serra, Procuradores Generales Interinos, Justo Gorbea Varona* y *Magda E. Haidar de Martí, Procuradores Generales Auxiliares,* abogados de El Pueblo; *Benicio Sánchez Castaño* y *Benicio Sánchez Rivera,* abogados del querellado.

PER CURIAM: Contra el querellado se formularon los siguientes cargos:

"(1) Allá para los días 3 de agosto y 4 de septiembre de 1970, 30 de marzo y 22 de septiembre de 1971, 1ro de febrero, 19 de abril, 1ro de mayo, 12 y 28 de julio y 22 de septiembre de 1972, respectivamente el querellado observó una conducta ilegal, inmoral e impropia como abogado al no poner a disposición del Inspector de Protocolos, Lic. Rafael Calor Mota, sus protocolos y registros de affidavits para examen en su oficina notarial, en abierta contravención al artículo 38 de la Ley Notarial (4 L.P.R.A. sec. 1038).

(2) Allá para los meses de diciembre de 1972, y enero y febrero de 1973 el querellado observó una conducta ilegal, inmoral e impropia como abogado al desobedecer dos resoluciones de este Honorable Tribunal de fechas 15 de diciembre de 1972 y de 2 de febrero de 1973 en las cuales se le ordenaba mostrar causa por la cual no debía ser disciplinado por su incumplimiento del Artículo 38 de la Ley Notarial y al negarse a hacer entrega de la totalidad de sus protocolos y libros de affidavits en abierto menosprecio a las órdenes de este Honorable Tribunal.

(3) El querellado ha observado una conducta ilegal, inmoral e impropia como abogado al no mantener y conservar íntegros sus protocolos, al no encuadernar sus protocolos el primer mes de cada año, al extraer su protocolo de su oficina

notarial y al no dar cuenta de la pérdida de un número considerable de escrituras al Juez Presidente de este Honorable Tribunal, todo en abierto desprecio a las obligaciones impuestas por la Ley Notarial en sus secciones 1034, 1031, 1033 y 1037 del Título 4 de L.P.R.A."

El Comisionado Especial nombrado por este Tribunal para recibir la prueba, Hon. Flavio E. Cumpiano, formuló las siguientes determinaciones de hecho:

"(1) El Lcdo. Fernando A. Villamil Higuera, también conocido como Fernando A. Villamil, Jr., fue admitido al ejercicio de la profesión de Abogado por el Tribunal Supremo de Puerto Rico en 3 de noviembre de 1960, y al ejercicio del Notariado en 21 de noviembre de 1960.

(2) El protocolo de instrumentos públicos del licenciado Villamil Higuera, aquí querellado, correspondiente al año 1960 fue examinado y hallado correcto en 21 de noviembre de 1962 por el entonces Inspector de Protocolos, Lcdo. Angel M. Díaz. Los otros protocolos del querellado no habían sido examinados desde esa fecha, eso es, los protocolos del querellado correspondientes a los años de 1961, inclusive, en adelante, no habían sido examinados.

(3) El Lcdo. Rafael Calor Mota, Inspector de Protocolos, visitó la oficina del querellado el 3 de agosto de 1970 y le indicó a éste que interesaba inspeccionar sus protocolos de instrumentos públicos, a lo que el querellado le expresó que todavía no los tenía disponibles y le solicitó tiempo y oportunidad para traerlos al día, encuadernarlos y ponerlos a su disposición. El Inspector de Protocolos en ocho ocasiones distintas, en 4 de septiembre de 1970; 30 de marzo y 22 de septiembre de 1971; 1 de febrero, 19 de abril, 1 de mayo, 12 de julio y 28 de julio de 1972, regresó a la oficina del querellado con el propósito de inspeccionar los protocolos pero sus gestiones fueron negativas o infructuosas porque al preguntar por el Notario y por sus protocolos, no estaba y no había dejado instrucciones específicas de que se pusieran los protocolos a disposición del Inspector.

En la noche del 27 de septiembre de 1972 el Inspector de Protocolos Calor Mota se personó a la residencia del licenciado Villamil Higuera para requerirle respecto a los protocolos y éste le prometió tenerlos listos y ponerlos a su disposición a la semana

siguiente a dicha visita, dando como justificación para ello el que no había terminado de examinarlos y quería entregarlos completos.

Pasado el tiempo sin que el querellado entregase sus protocolos para inspección o se comunicase con el Inspector como le había prometido, éste rindió, en 4 de diciembre de 1972, un informe escrito sobre estos pormenores al Director de Inspección de Notarías, Lcdo. Govén D. Martínez.

(4) El Director de Inspección de Notarías sometió un informe, en 5 de diciembre de 1972, al Hon. Pedro Pérez Pimentel, entonces Juez Presidente Interino, y aduciendo que el licenciado Villamil Higuera había estado evadiendo el examen de sus protocolos desde el año 1970, recomendó, entre varias cosas, se ordenase al Alguacil General del Tribunal Supremo a incautarse de los protocolos y el registro de affidavits del licenciado Villamil Higuera. Mediante Resolución de 15 de diciembre de 1972 el Tribunal Supremo ordenó a su Alguacil General a incautarse de los protocolos y registro de declaraciones del querellado y, además, ordenó a éste a mostrar causa dentro de treinta (30) días por qué no debiera ser disciplinado con motivo de su incumplimiento de las disposiciones contenidas en la Sección 38 de la Ley Notarial (4 LPRA sec. 1038).

(5) El día 23 de enero de 1973 el Alguacil General del Tribunal Supremo procedió a notificar el mandamiento de entrega de protocolos al licenciado Villamil Higuera, según la Resolución del 15 de diciembre de 1972, invitando el alguacil al abogado a que le acompañara a la oficina de éste para que le entregase los protocolos y libros de affidavits. El abogado le informó al Alguacil que no podía hacerle entrega, como en efecto no le entregó, los referidos libros y documentos.

(6) Enterado el Tribunal Supremo de lo acontecido el 23 de enero de 1973, dictó otra Resolución, en 2 de febrero de 1973, reiterando su orden relacionada con la incautación de los protocolos y registro de declaraciones juradas del querellado. Esta Resolución fue diligenciada al licenciado Villamil Higuera el 7 de febrero de 1973 por el Alguacil General del Tribunal Supremo. En esa ocasión el abogado querellado entregó al Alguacil los siguientes libros de protocolos: 1 tomo del año 1960; 7 tomos del año 1961 y 10 tomos del año 1962. Al requerírsele los restantes libros de protocolos informó que no podía entregarlos ya que los tenía encuadernando. Es un hecho probado que en esa fecha, 7 de

febrero de 1973, los otros libros de protocolos del querellado no se encontraban encuadernados.

(7) Los protocolos del querellado para los años 1961 y 1962, entregados, como se dijo, en febrero de 1973, fueron examinados por el Inspector de Protocolos José R. Seda quien rindió su informe en abril del mismo año. El examen efectuado arrojó numerosas deficiencias respecto a notas de aperturas y de cierre sin fechar, firmar, signar, sellar o rubricar. En adición, aparecieron en dichos libros de protocolos numerosas deficiencias de suma importancia en el otorgamiento de instrumentos públicos.

(8) Enterado el Tribunal Supremo de lo acontecido el 7 de febrero de 1973 dictó otra Resolución, en 16 de febrero de 1973, ordenando nuevamente al Alguacil a incautarse de todos los protocolos y registros de declaraciones juradas del querellado 'en el lugar y en las condiciones en que dichos documentos se encontraren. . . .' Ordenó además al licenciado Villamil Higuera a cumplir 'de inmediato' con la orden de mostrar causa contenida en su resolución de 15 de diciembre de 1972 (supra), cuyo término había expirado en 14 de enero de 1973.

La Resolución de 16 de febrero de 1973 fue diligenciada en la persona del querellado el 23 de febrero de ese año por el Alguacil General quien nuevamente le requirió la entrega de los libros de protocolos y affidavits, no cumpliendo el querellado con el requerimiento héchole, presentando como pretexto el que los tenía encuadernando en el pueblo de Cataño, Puerto Rico. En esa misma fecha el Alguacil General se personó a la oficina del querellado y la secretaria de éste le entregó un libro-registro de declaraciones juradas, informándole no haber allí ningún libro de protocolos u otro libro-registro de declaraciones juradas. En ese mismo día el Alguacil General visitó el pueblo de Cataño y se entrevistó allí con tres personas dedicadas a la encuadernación de protocolos quienes le informaron no tener trabajo alguno del licenciado Villamil Higuera. Los esfuerzos del Alguacil General por obtener los protocolos del querellado 'en el lugar y en las condiciones en que dichos documentos se encontraren' fueron improductivos.

El querellado tampoco en dicha ocasión mostró causa por que no debería ser disciplinado, según exigídole por la Resolución del Tribunal Supremo.

(9) El libro-registro de declaraciones juradas del licenciado Villamil Higuera, incautado, como se dijo, en 23 de febrero de

1973, fue examinado por el Inspector de Protocolos José R. Seda quien rindió un informe en abril del mismo año, acusando numerosas y serias deficiencias.

(10) El día 5 de marzo de 1973 el querellado le entregó al Director de Inspección de Notarías, y éste al Alguacil General, los tomos del 1 al 7 de su protocolo para el año 1966. El 7 de marzo del mismo año, y por conducto de los mismos funcionarios, el querellado entregó un libro de protocolo correspondiente, respectivamente, a los años 1964, 1966, 1969 y 1970.

Al cotejarse con los índices notariales sometidos por el abogado querellado al Tribunal Superior para el 13 de marzo de 1973 éste no había entregado al Tribunal Supremo seis escrituras correspondientes al 1963, 36 escrituras otorgadas en el 1965, 20 escrituras otorgadas en 1967, 11 escrituras del 1968 y 2 escrituras del 1971.

Posteriormente, el 19 de marzo, el notario querellado entregó dos tomos de protocolos al Tribunal, uno correspondiente al 1963 y el otro al 1971. Restaba por entregar, pues, en esa fecha, 19 de marzo de 1973, los protocolos correspondientes a los años 1965, 1967 y 1968.

(11) En vista de la naturaleza de las actuaciones profesionales del querellado, el Tribunal Supremo emitió una Resolución el 28 de marzo de 1973 suspendiendo permanentemente al licenciado Villamil Higuera del cargo de Notario Público, ordenando el examen de su notaría, y ordenando al Procurador General investigar sus actuaciones profesionales. Esta Resolución fue diligenciada en la persona del querellado el día 30 de marzo de 1973.

(12) Los protocolos del querellado entregados al Tribunal Supremo para esa fecha fueron examinados por el Inspector de Protocolos José R. Seda. El examen realizado evidenció numerosas deficiencias de menor importancia, aunque deficiencias notariales al fin, tales como notas de apertura y de cierre sin firmar, signar, sellar, rubricar o fechar; páginas sin foliar y falta de identificación de la persona en las notas de saca. Otras deficiencias, aunque en menor número, eran de mayor alcance. El examen también evidenció una deficiencia en la cancelación de los sellos de rentas internas por concepto de derechos en el otorgamiento de instrumentos públicos, montante dicha deficiencia a la suma de $261.50.

(13) En 4 de mayo de 1973 el Tribunal Supremo emitió otra Resolución ordenando al licenciado Villamil Higuera a que dentro del término de diez (10) días, a partir de esa fecha, mostrase causa por escrito por la que no debía ser condenado por desacato por incumplimiento a las Resoluciones de 15 de diciembre de 1972 y 2 de febrero de 1973, que ordenaban, como se dijo, al alguacil a incautarse de los protocolos del querellado, y al querellado a mostrar causa por la cual no debía ser disciplinado por motivo de su incumplimiento de las disposiciones de la Ley Notarial. La Resolución de 4 de mayo de 1973 fue diligenciada el 10 del mismo mes en la persona del querellado.

(14) El día 2 de febrero de 1973 el querellado compareció por escrito ante el Tribunal Supremo y refiriéndose a la Resolución de 15 de diciembre de 1972, servídale el 23 de enero de 1973, adujo haber pasado por traumas de índole legal que 'han dilatado la preparación de sus protocolos para ser mostrado [sic] a este Honorable Tribunal' y solicitó un término de treinta (30) días para preparar los protocolos y entregarlos al Inspector de los mismos. El término solicitado por el querellado venció sin éste haber cumplido con lo prometido.

(15) El 21 de mayo de 1973 el querellado compareció por escrito ante el Tribunal Supremo informando que luego de la Resolución del 16 de febrero de 1973 él comenzó a llevar los protocolos al Tribunal 'tan pronto éstos le eran entregados por el encuadernador.' Admitió que, efectivamente, no había entregado los protocolos correspondientes a los años 1965, 1967 y 1968 e indicó y adujo que no lo había hecho 'por faltar algunas escrituras las cuales se extraviaron en un escalamiento que fue víctima este notario en su oficina y que dicho notario quería reconstruir para poderlas entregar debidamente encuadernadas al Honorable Tribunal Supremo.'

(16) En adición a haberlo expresado por escrito ante el Tribunal Supremo de Puerto Rico, el abogado querellado, en declaración jurada prestada el 18 de mayo de 1973 ante la Lcda. Magda Haidar de Martí, Procuradora General Auxiliar, previo las advertencias de rigor y habiéndosele brindado la oportunidad para no declarar, o retirar todo lo declarado, expresó también que su inhabilidad para entregar las escrituras que a esa fecha le faltaban de los protocolos de los años 1965, 1967 y 1968 se debía a que se le habían extraviado durante un escalamiento sufrido en su oficina en el año 1969. Sin embargo, admitió que

nunca informó, como en efecto no lo hizo, al Inspector de Protocolos, o al Juez Presidente del Tribunal Supremo, del escalamiento y de la pérdida de las escrituras aludidas.

(17) El licenciado Villamil Higuera también expresó en la antes identificada declaración jurada que durante el año 1972 fue sometido a un largo proceso judicial por supuestas violaciones a la Ley de Substancias Controladas, habiéndose rendido a su favor un veredicto absolutorio y exculpatorio. El proceso fue sumamente costoso para él, habiéndole dejado en condiciones económicas difíciles. Aduce como justificación para sus actuaciones el que el proceso criminal le había afectado su condición física y mental, que unido a su precaria situación económica, le impidieron atender debidamente las órdenes del Tribunal Supremo de Puerto Rico.

(18) Como se desprende de previas determinaciones de hecho, a partir del día 7 de febrero de 1973 (en que el querellado entregó su protocolo de 1960, 7 tomos del de 1961 y 10 tomos del de 1962) el querellado fue paulatina y gradualmente entregando tomos de sus protocolos de distintos años en diferentes fechas. Así, pues, entregó algunos tomos el 5 de marzo de 1973, otros el 7 de marzo y otros el 19 del mismo mes, restando por entregar a esa fecha, como se dijo en la determinación número 10, los protocolos correspondientes a los años 1965, 1967 y 1968. Posteriormente, el 14 de mayo de 1973, el licenciado Miguel A. Cuadros, con oficinas en el mismo edificio donde una vez el querellado tuvo su despacho profesional, entregó al Inspector de Protocolos José A. Seda, tres (3) escrituras autorizadas por el licenciado Villamil Higuera. Estas escrituras, sin encuadernar, fueron examinadas por el referido inspector quien señaló sus deficiencias. Subsiguientemente, en 25 de mayo de 1973, el querellado entregó al Tribunal Supremo las escrituras numeradas 1 a la 29 y 32 a la 36 del año 1965; 1 a la 3, 10 a la 13 y 16 a la 22 del año 1967; y 1 a la 6, 8 a la 9, 11 y 13 del año 1968. Todas esas escrituras estaban sin encuadernar, la mayor parte de ellas se encontraban sin foliar, y algunas entrañaban defectos o deficiencias notariales.

A la fecha de 25 de mayo de 1973 aún se desconocía el paradero de once (11) escrituras; las enumeradas 30 y 31 del año 1965; las 4, 5, 6, 7, 8 y 9 del año 1967, y las 7, 10 y 12 del año 1968.

Ulteriormente, el 19 de abril de 1974, el querellado entregó al Tribunal Supremo las escrituras 4, 5, 6, 7, 8 y 9 del año 1967. Luego, por último, el querellado entregó en el mismo día de la vista la escritura Núm. 7 del protocolo del año 1968. Todas estas escrituras entregadas en 19 de abril y 9 de mayo de 1974 estaban sin encuadernar.

Recapitulando, hacemos constar que a la fecha de la vista celebrada para ventilar los cargos contra el querellado, éste no había entregado, y se desconocía el paradero de cuatro (4) escrituras, las enumeradas 30 y 31 del protocolo del año 1965 y las 10 y 12 del protocolo del 1968.

(19) En momento alguno, inmediata, o razonablemente después que las Resoluciones de 15 de diciembre de 1972 y 2 de febrero y 16 de febrero de 1973 fueron diligenciadas en la persona del querellado, y a éste le fuese requerida la entrega de sus protocolos, sin que en esos precisos momentos los entregare, compareció el querellado ante el Tribunal Supremo de Puerto Rico a mostrar causa, o justificación, o fundamento alguno para su negativa, o su imposibilidad, o su incapacidad, para entregar sus protocolos y su registro de declaraciones juradas en el momento en que era requerido para ello, o a explicar su justificación para la entrega gradual y paulatina de los mismos.

(20) Según se ha señalado, el querellado, a partir del 7 de febrero de 1973, fue gradualmente entregando al Tribunal Supremo diferentes tomos de protocolos de distintos años. Según la propia admisión del querellado, esto lo hacía 'tan pronto dichos tomos le eran entregados por el encuadernador.' De esa admisión se deduce, y de los informes de los exámenes efectuados de dichas escrituras por los Inspectores de Protocolos, se colige, que el querellado no los hacía encuadernar cada año y no tenía sus protocolos debidamente preparados, según requerido por distintas secciones de la Ley Notarial."

La prueba antes reseñada demuestra que el querellado ha observado una conducta ilegal, inmoral e impropia, evidenciada por su contumaz desobediencia a las órdenes de este Tribunal y por la crasa negligencia en el desempeño de sus funciones como notario, en abierto desprecio a las obligaciones impuestas por la Ley Notarial en sus secciones 31, 33, 34 y 37 (4 L.P.R.A. secs. 1031, 1033, 1034 y 1037).

*Es evidente que el querellado debe ser separado del ejercicio de la abogacía. Así se decretará.*

El Juez Presidente Señor Trías Monge no intervino y el Juez Asociado Señor Rigau se inhibió.

—O—

RESOLUCIÓN *NUNC PRO TUNC*

San Juan, Puerto Rico, a 21 de noviembre de 1975

Se modifica nuestra sentencia del 31 de octubre de 1975 limitando al término de un año la suspensión del querellado del ejercicio de la abogacía, término que se contará a partir de la fecha de notificación de esta resolución.

Lo acordó el Tribunal y certifica el Secretario. Los Jueces Asociados Señores Rigau y Martín se inhibieron. El Juez Asociado Señor Negrón García emitió opinión concurrente y disidente.

(Fdo.)  Angel G. Hermida

*Secretario*

—O—

Opinión concurrente y disidente del Juez Asociado, Señor Negrón García.

San Juan, Puerto Rico, a 21 de noviembre de 1975

Concurro con el Tribunal en cuanto a reconsiderar la sanción impuéstale al querellado Fernando A. Villamil Higuera de separarlo ilimitadamente del ejercicio de la abogacía por entender que nuestro criterio inicial no guarda una razonable proporción con los cargos probados, según éstos fueron relacionados en nuestra Opinión Per Curiam de fecha 31 de octubre de 1975. Al igual que en otras áreas del derecho, la aplicación de una sanción o castigo—en el más depurado

quehacer de administrar justicia—presupone la individuación de la medida correctiva, atemperando su rigor a las circunstancias de cada caso en particular balanceando objetivamente los factores personales del abogado y el interés social de mantener la solidez y fundamentos éticos de la clase togada.

No obstante, al igual que expusiera en mi concurrencia emitida en el caso de *In re Maldonado Rivera*, 103 D.P.R. 523 (1975), estimo de gran gravedad el que el querellado haya desatendido no sólo a los funcionarios de la Oficina de Inspección de Notarías y al Alguacil—evadiendo en múltiples ocasiones, por más de dos (2) años, la entrega de sus protocolos de instrumentos públicos y dando información falsa respecto a los mismos—sino que conscientemente incumplió varias órdenes de este Tribunal.

Reitero hoy el siguiente pensamiento: "No son separables a mi juicio, las normas de respeto a que son acreedores los tribunales de justicia en nuestro país por razón de que el origen de las órdenes dictadas sean con respecto a la ley notarial o a un incidente en una causa judicial. En esencia el principio rector que debe prevalecer es el acatamiento de los dictámenes judiciales por la ciudadanía y especialmente por los miembros de la clase togada quienes tienen el privilegio de defender, con su ejemplo, el ministerio de la ley. . . . este Tribunal debe definir de manera clara y precisa su postura futura respecto a las medidas correctivas a que están sujetos los miembros de la profesión de abogado por incumplimiento de órdenes judiciales, siendo ello imprescindible para el descargo del mandato constitucional de preservar un sistema de justicia eficiente y de respeto. . . . Nuestra sociedad contemporánea exige la más alta disciplina profesional por parte de los abogados y ello hace ineludible que reformulemos nuestro enfoque y exijamos de éstos la responsabilidad real que conlleva el principio que encarna la expresión de honrar la toga." *In re Maldonado Rivera*, supra.

Obviamente una suspensión provisional de un año anula el propósito normativo de nuestra facultad disciplinaria y debilita su efectividad; la conducta del querellado trascendió simples irregularidades a la Ley Notarial. "El juzgador no puede ignorar el atributo de compasión justificada, pero tampoco debe sacrificar intereses públicos de alta calidad." *In re Ardín*, 75 D.P.R. 496, 501 (1953).