*In re* José D. Malavet Rodríguez.

.  *Número:* 4965          *Resuelto:* 2 de mayo de 1994

*Johnny Elías Rivera,* abogado del peticionario; *Carlos Lugo Fiol, Reina Colón de Rodríguez, Procuradores Generales Interinos,* y *Cynthia Iglesias Quiñones, Procuradora General Auxiliar,* abogados de El Pueblo.

## RESOLUCIÓN

Examinados cuidadosamente varios documentos presentados en este caso, se autoriza la reinstalación del Lcdo. José Malavet Rodríguez al ejercicio del notariado y la abogacía.

El 2 de junio de 1986 el señor Malavet Rodríguez —quien tiene sesenta y un (61) años de edad— cumplió fiel y enteramente la sentencia que le fue impuesta por el Tribunal federal de Puerto Rico en 1983. Durante los casi ocho (8) años transcurridos desde que satisfizo dicha sentencia, continuó separado del ejercicio profesional, sumando así un total de diez (10) años desde que fue desaforado.

La solicitud de reinstalación de Malavet Rodríguez fue acompañada por numerosos testimonios favorables de personas que le conocen personalmente, incluyendo varios abogados, funcionarios públicos, un sacerdote y un perito psiquiatra, quienes en conjunto apoyan el criterio de que el peticionario está rehabilitado.

En vista de ello, y a la luz de nuestra determinación en *In re Pacheco Nieves,* 135 D.P.R. 95 (1994), y de nuestra obligación de dar trato igual a quienes estén en situaciones comparables, *procede la reinstalación de Malavet Rodríguez.*

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió una opinión disidente, a la cual se unió la Juez Asociada Señora Naveira de Rodón. El Juez Asociado Señor Alonso Alonso no intervino.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión disidente del Juez Asociado Señor Negrón García, a la cual se une la Juez Asociada Señora Naveira de Rodón.

"Hay profesiones que no se compadecen con los 'términos medios', con las 'medias tintas' en su ejercicio; es tal la excelsitud de su ministerio, la delicadeza de su cometido, la trascendencia de su profesión, que ni la más leve nota de humana parcialidad puede empañar la fulgencia de su prestigio." F. Soto Nieto, *Compromiso de Justicia*, Madrid, Ed. Montecorvo, 1977, págs. 29–30. Desafortunadamente no siempre es así. En ocasiones, la fragilidad humana del abogado opaca ese prestigio, por lo cual nos vemos institucionalmente compelidos a disciplinarlo o, en disensos, a asumir posiciones minoritarias que para algunos resultan impopulares o antigremiales. Esa es la situación de autos.

La mayoría ratifica una norma reciente que vulnera los cimientos en los cuales desde comienzos del siglo se han apuntalado los principios adjudicativos en esta materia. La resolución para reinstalar al peticionario José D. Malavet Rodríguez a la abogacía inflige una ruda estocada al prestigio de nuestro sistema de justicia, pues permite el reingreso al quehacer jurídico de quienes no han alcanzado la regeneración moral necesaria para desempeñarse a la altura que exige el ejercicio de la profesión legal.

Expongamos el trasfondo pertinente.

# I

El abogado Malavet Rodríguez fue hallado culpable en el Tribunal de Distrito Federal para el Distrito de Puerto Rico de ayudar y alentar (*aiding and abetting*) a otras personas a que presentaran documentos fraudulentos y declaraciones falsas en las solicitudes de los pasaportes. 18 U.S.C. secs. 2 y 1542. Su convicción fue confirmada por el Tribunal Federal de Apelaciones para el Primer Circuito.

Como resultado, lo desaforamos el 24 de octubre de 1984. *In re Malavet Rodríguez*, 115 D.P.R. 680 (1984). El 2 de junio de 1986 cumplió su período de tres (3) años de sentencia suspendida y, el 24 de marzo de 1993, solicitó la readmisión a la abogacía. Referimos su pedido a la Comisión de Reputación de Aspirantes al Ejercicio de la Abogacía (en adelante Comisión). *Ante dicha Comisión, Malavet Rodríguez indicó con reiteración que se consideraba inocente de los cargos en que había sido encontrado culpable.* La Comisión recomendó que no se reinstalara, pues encontró que trivializó la prueba en su contra, fue impreciso y ambiguo y no detectó sinceridad en su reclamo de inocencia. Subsiguientemente, en reconsideración, la Comisión se ratificó. No conforme, Malavet Rodríguez cuestionó, de nuevo, dicho dictamen e invocó a su favor *In re Pacheco Nieves*, 135 D.P.R. 95 (1994), en el cual, con la inhibición de tres (3) Jueces —incluso el que suscribe— se autorizó la reinstalación.

Allí el Tribunal, aunque reconoció la razonabilidad del criterio de la Comisión a los efectos de que ordinariamente la rehabilitación exitosa de una persona que ha delinquido depende de su aceptación de la responsabilidad por el error cometido, concluyó que ello no podía convertirse en norma en todo caso. Como *ratio decidendi*, el Tribunal sentenció que "una persona que genuinamente se entiende inocente de unos hechos delictivos que le fueron imputados en el pasado no debe ser obligada a 'aceptar' su culpabilidad

como condición sine qua non para su readmisión a la profesión". *In re Pacheco Nieves*, supra, pág. 98. El Tribunal estimó que la buena reputación de Pacheco Nieves era suficiente para readmitirlo y que, en el tiempo que llevaba separado, había logrado su rehabilitación. Finalmente, en el caso citado *In re Pacheco Nieves*, el Tribunal señaló que como la culpabilidad o inocencia del solicitante había sido adjudicada por el juzgador de hechos en forma desfavorable, el asunto no debía relitigarse.

Malavet Rodríguez nos hace planteamientos idénticos al expresar que su separación "de la abogacía, desde hace diez años, hasta hoy ha logrado el propósito fundamental de rehabilitación que perseguía su alejamiento mandatorio de la profesión". Réplica a recomendación desfavorable, pág. 2.

En abono de su pedido, nos adelanta la tesis de que el solo hecho de insistir en una inocencia que genuinamente cree, no debe ser razón para negar su reinstalación. Al igual que *In re Pacheco Nieves*, supra, de manera indirecta el peticionario pretende volver a litigar el asunto de su inocencia o culpabilidad; esto es, mediante su alegación de inocencia, revivir lo ya adjudicado.

II

Sin la atadura de la inhibición en *In re Pacheco Nieves*, supra, hoy disentimos de una norma que atenta contra la pureza del proceso que debe existir para reintegrar al sistema de justicia solamente a personas meritorias, quienes hayan superado los defectos y debilidades que los llevaron a transgredir las leyes que juraron defender. En recta consistencia lógica, el peticionario Malavet Rodríguez no ha acreditado suficiente ni satisfactoriamente la rehabilitación necesaria. Nos explicamos.

*In re Hiss*, 333 N.E.2d 429, 433 (1975), caso rector expositivo de la doctrina adoptada en *In re Pacheco Nieves*,

supra, se resuelve que la convicción y posterior desaforo del abogado constituyen "evidencia concluyente de su falta de moralidad (*moral character*) al momento de su remoción del puesto". (Traducción nuestra.) Véase *Re Keenan*, 37 N.E.2d 516 (1941).

Un abogado no debe tener más derechos que otros profesionales sujetos al rigor de un esquema disciplinario. Le debe estar vedado relitigar su caso en términos de la inocencia o culpabilidad. Acoger el fundamento de *In re Hiss*, supra, a los efectos de que un abogado —que se considere genuinamente inocente— pueda insistir en su inocencia, constituye un contrasentido que atenta contra el efecto concluyente de "cosa juzgada" de una sentencia condenatoria y posterior desaforo, a la vez que arroja un manto de duda sobre la regeneración moral del individuo que solicita la reinstalación.

Lógicamente, para efectos de la separación y reinstalación, el propio esquema disciplinario vigente parte de esos efectos concluyentes. No podría ser de otro modo. Los procesos judiciales penales y disciplinarios implican que, a través del crisol de sus respectivos grados de prueba (los primeros, incluso más allá de duda razonable), el Tribunal ha quedado convencido de que la persona cometió el delito.

Tan firme y profunda es esa determinación judicial, que la Sec. 9 de la Ley de 11 de marzo de 1909 establece la inmediata suspensión o destitución del "abogado que fuere culpable de engaño, conducta inmoral (malpractice), delito grave (felony) o delito menos grave (misdemeanor), en conexión con el ejercicio de su profesión o que fuere culpable de cualquier delito que implicare depravación moral". (Énfasis suprimido.) 4 L.P.R.A. sec. 735. A su amparo, hemos desaforado en innumerables situaciones. Véanse: *In re Rojas Jiménez*, 134 D.P.R. 732 (1993); *In re Medina Lugo*, 134 D.P.R. 373 (1993); *In re Fuentes Fernández*, 133 D.P.R. 548 (1993); *In re Farinacci García*, 133 D.P.R. 206 (1993); *In re Maldonado Rivera*, 133 D.P.R. 207 (1993); *In re Bonilla*

*Martínez,* 132 D.P.R. 1038 (1993); *In re Bobet Ruiz,* 132 D.P.R. 881 (1993); *In re Rúa Cabrer,* 132 D.P.R. 431 (1992); *In re Ríos Ruiz,* 129 D.P.R. 666 (1991); *In re Rivera Medina,* 127 D.P.R. 600 (1990); *In re Santiago Martínez,* 123 D.P.R. 359 (1989); *In re Dalmau Gómez,* 122 D.P.R. 360 (1988); *In re Santiago Casanova,* 122 D.P.R. 489 (1988); *In re Pérez Reilly,* 120 D.P.R. 517 (1988); *In re Torres López,* 119 D.P.R. 55 (1987); *In re Malavé Ortiz,* 119 D.P.R. 492 (1987); *In re Flores Betancourt,* 119 D.P.R. 479 (1987); *In re Gutiérrez Díaz,* 117 D.P.R. 92 (1986); *In re Ortiz Gilot,* 117 D.P.R. 167 (1986); *In re Boscio Monllor,* 116 D.P.R. 692 (1985); *In re Núñez López,* 115 D.P.R. 702 (1984); *In re Sánchez Gómez,* 115 D.P.R. 74 (1984); *In re Arreche Holdum,* 114 D.P.R. 680 (1983); *In re Rivera Cintrón,* 114 D.P.R. 481 (1983); *In re Tormes,* 30 D.P.R. 267 (1922).

Para superar el efecto concluyente y adverso que tienen los dictámenes penales y disciplinarios,[1] la persona "tiene que demostrar un expediente de *rehabilitación.* ... La rehabilitación, en última instancia, se demuestra por un curso de su conducta que permite al Tribunal concluir que hay poca probabilidad de que, después que dicha rehabilitación esté completa y el solicitante sea readmitido a la práctica del Derecho, se involucre en conducta antiprofesional". (Traducción nuestra.) *In re Brown,* 273 S.E.2d 567, 571 (1980). Véanse, además: *Comm. on Legal Ethics of W. Va. v.*

---

[1] El efecto que dicha determinación encierra ha llevado a varias jurisdicciones, ante casos de suspensión o desaforo indefinido, a prohibir que se solicite la reinstalación antes de que transcurra determinado período de tiempo fijado por las autoridades pertinentes. *State Bar of Texas v. Sutherland,* 766 S.W.2d 340 (1989); *Matter of Reed,* 285 S.E.2d 726 (1982); *People v. Good,* 576 P.2d 1020 (Colo. 1978); *Comm. on Prof. Ethics, Etc. v. Munsinger,* 264 N.W.2d 731 (1978); *Steere v. State Bar of Texas,* 464 S.W.2d 732 (1971); Anotación, *Reinstatement of Attorney after Disbarment, Suspension, or Resignation,* 70 A.L.R.2d 268 (1960).

Asimismo, en las jurisdicciones donde existe un estatuto que provee que una persona convicta de un delito grave será descalificada de practicar como abogado, se prohíbe la reinstalación. *Matter of Glucksman,* 394 N.Y.S.2d 191 (1977); *People v. Buckles,* 453 P.2d 404 (Colo. 1969); *In re Keogh,* 267 N.Y.S.2d 87 (1965); *In re Stump,* 114 S.W.2d 1094 (1938).

*Farber*, 408 S.E.2d 274 (1991); *Frasher v. W. Va. Bd. of Law Examiners*, 408 S.E.2d 675 (1991).([2])

No podemos hablar de rehabilitación en el mundo teórico. Su determinación conlleva considerar:

(1) la naturaleza y circunstancias de la mala conducta por la cual el abogado fue disciplinado; (2) *si el abogado reconoce la seriedad de su mala conducta*; (3) la conducta del abogado desde que la disciplina fue impuesta, *incluyendo los pasos tomados para remediar pasadas faltas y prevenir las futuras*; (4) el carácter actual del abogado, y (5) las cualificaciones presentes del abogado y su competencia para practicar el derecho. *In re Roundtree*, 503 A.2d 1215, 1217 (D.C. 1985). Véanse también la Regla XI, secs. 16(d)(1)–(d)(2); *In re Brown*, [supra]; *In re Stanton*, 589 A.2d 425, 426 (D.C. 1991) (per Curiam) (*Stanton IV*), certiorari denegado [502] U.S. [1098], 112 S.Ct. 1178, 117 L.Ed.2d 422 (1992). (Énfasis y traducción nuestros.) *In re Steele*, 630 A.2d 196, 201 (1993).

Al respecto hemos dicho que los criterios considerados en una solicitud de reinstalación comprenden no sólo la suficiencia o no de la suspensión como castigo, sino la integridad moral del peticionario al momento de pretender reingresar. *In re Rivera Cintrón*, 120 D.P.R. 706, 708 (1988). Y en *In re Cardona Vázquez*, 112 D.P.R. 686, 689 (1982), sentenciamos:

El peso de la prueba recae sobre éste, quien debe demostrar que su conducta moral *ha variado* hasta alcanzar el grado y medida necesarios en que ese atributo resulta indispensable para estimarle capacitado para descargar intelectual y éticamente los deberes y obligaciones que se esperan de todo abogado. (Énfasis suplido.)

Si para lograrlo exigimos demostrar una variación hacia lo positivo de la conducta moral del peticionario, es porque

---

([2]) *Matter of Gutman*, 599 N.E.2d 604 (1992); *In re Brown*, 617 A.2d 194 (1992); *In re Hughes*, 594 A.2d 1098 (1991); *Comm. on Legal Ethics of W. Va. v. Farber*, 408 S.E.2d 274 (1991); *Worley v. Alabama State Bar*, 572 So. 2d 1239 (1990); *In re Brown*, 273 S.E.2d 567, 571 (1980); *Matter of Peterson*, 274 N.W.2d 922 (1979); *The Florida Bar*, 341 So. 2d 774 (1977); *Lester v. Kentucky Bar Association*, 532 S.W.2d 435 (1976); *In re Hiss*, 333 N.E.2d 429 (1975); *In re Braverman*, 316 A.2d 246 (1974).

partimos de la corrección y finalidad de la determinación de culpabilidad previa. Permitirle insistir en su inocencia, y aun así mantener el requisito de probar que está rehabilitado, es un contrasentido que atenta contra la lógica y disminuye la seriedad que debe caracterizar todo sistema adjudicativo.(³)

## III

De lo expuesto aflora una lección clara: a la hora de evaluar una reinstalación al ejercicio de la abogacía es menester analizar y ponderar un conglomerado de factores que nos arrojen luz, desde el expediente del procedimiento disciplinario *hasta sus actitudes.* El interés público exige que sólo los letrados capacitados moral y éticamente puedan ejercitar nuestra noble profesión.

> La sentencia de desaforo es evidencia contra el solicitante, y el récord del procedimiento de desaforo puede ser considerado. De hecho, todos los factores pertinentes al desaforo o suspensión del abogado, así como sus representaciones para reinstalación, son pertinentes; y el tribunal o junta podría considerar y sopesar la actitud del abogado y su grado de arrepentimiento, y la consistencia de sus declaraciones. ... El mero aparente buen carácter moral presente de un peticionario *no es suficiente para reinstalación cuando su actitud no ha cambiado en cuanto a la conducta por la cual fue desaforado. El arrepentimiento, o falta de arrepentimiento, es evidencia, como cualquier otra, a ser considerada al evaluar el carácter del abogado desaforado y determinar las probables repercusiones de su solicitada*

---

(³) La situación no debe sorprender a nadie. En *In re Cruz Disdier*, 73 D.P.R. 346, 352 (1952), aunque no señalamos expresamente que era un requisito imprescindible para demostrar rehabilitación el aceptar culpa alguna, dicho factor fue medular y determinante para ordenar la reinstalación del abogado, quien "[m]anifestó, asimismo, *sentirse arrepentido y moral y espiritualmente reformado y regenerado...*". (Énfasis suplido.) Por otra parte, el fiscal auxiliar de este Tribunal en *ese* caso, apuntó "que la opinión general tanto de los profesores (sic) como de los compañeros de Río Piedras que ha examinado es en el sentido de que Cruz Disdier ha sufrido su separación *y está arrepentido,* y cree que en términos generales no hay riesgos, hasta donde es posible determinar, para el Pueblo de Puerto Rico, ni para el pueblo puertorriqueño, en reinstalar al peticionario en el ejercicio de su profesión". (Énfasis suplido.) Íd., págs. 352–353.

*reinstalación.* La falta de un abogado desaforado a ser *veraz* en el procedimiento en que busca reinstalación sustentará una conclusión de que el abogado no se ha rehabilitado lo suficiente para merecer reinstalación como miembro del foro. (Traducción y énfasis nuestros.) 7A C.J.S., *Attorney & Client*, Sec. 128, págs. 160–161, 162 y casos allí citados.

En el esc. 11 en *In re Brown*, 617 A.2d 194, 197–198 (1992), al elaborar los requisitos para acreditar la rehabilitación, se dijo que un tribunal

... debe asegurarse que esos rasgos que llevaron al desaforo del peticionario, ya no existen y que éste, en su lugar, es un individuo cambiado, con una apreciación cabal de su error y una nueva determinación para adherirse a los altos parámetros de integridad y competencia legal que este Tribunal requiere. *In re Barton*, 291 Md. 61, 64, 432 A.2d 1335, 1336 (1981); véase también *In re Peterson*, 274 N.W. 2d. 922, 926 (Minn. 1979) ("la rehabilitación y reformación demandan que el individuo perciba y rechace su conducta errónea y demuestre en alguna forma positiva que él tiene ahora un sentido correcto de la responsabilidad profesional"). (Traducción nuestra.)

Coincidimos plenamente con el pronunciamiento siguiente de la Comisión en este asunto:

No interpretamos que la decisión del Tribunal Supremo en *Pacheco Nieves* prive a la Comisión y al propio Tribunal de la facultad para pasar juicio sobre la credibilidad del reclamo de inocencia de quien solicita reinstalación. No interpretamos que ese caso resuelva que debe reinstalarse a la abogacía a una persona sobre cuya sinceridad al prestar testimonio *el adjudicador guarde serias y justificadas dudas.* Si nuevamente nos equivocamos al respecto, y ese juicio nos está vedado a nosotros y al, propio Tribunal Supremo,[3] el peticionario tiene expedito el camino al Tribunal para que sea el propio Tribunal quien nos informe del error de nuestro proceder.

---

[3] Si así fuera, la estrategia perfecta en todo caso de reinstalación sería reclamar inocencia por los hechos que motivaron la condena penal. Eso relevaría al peticionario de tener que demostrar: (1) rehabilitación; y, (2) la sinceridad de su convencimiento de que es inocente. Aceptar un peticionario que cometió los hechos por los que fue condenado sería, bajo esa hipótesis, un serio error estratégico. (Énfasis suplido.) Resolución de 8 de abril de 1994, pág. 3 y esc. 3.

## IV

Forzoso nuestro disentir, no sólo porque rechazamos la ratificación por el Tribunal de la doctrina de *In re Pacheco Nieves*, supra, sino porque se aplica erróneamente a los hechos. Aun bajo el prisma doctrinario aquí objetado, el peticionario Malavet Rodríguez no ha acreditado la suficiencia moral necesaria para decretar su reinstalación.

Los hechos por los cuales fue encontrado culpable y posteriormente desaforado están bien sintetizados por el Procurador General:

> Aduce que él conoce un señor Alvarez que es cubano que tenía una imprenta y que el señor Malavet Rodríguez como miembro de la Asociación de Contadores tuvo amistad con él. El señor Alvarez le hacía trabajo de imprenta a la Asociación. Al cabo de 20 años el peticionario se vuelve a encontrar con el señor Alvarez quien alegadamente le pregunta que si él conocía a Quiñones que saca los pasaportes rápido. A lo que el peticionario respondió en la afirmativa y le dijo donde podía encontrarlo. Luego manifiesta que vi[o] a Quiñones en San Juan con el señor Alvarez. Un día recuerda haber ido a almorzar al Restaurante La Gallega y saludó a Quiñones[,] después de eso fue arrestado. El señor Malavet Rodríguez alega no tener animosidad contra Quiñones, si aclaró que había una línea entre ambos. Dice que no tuvo relación con el Departamento de Estado. Moción en oposición de 21 de julio de 1993, pág. 8.

Ante la Comisión, al ser inquirido varias veces sobre si se sentía inocente o culpable, contestó:

> R.   ¿Que cómo yo me siento? Digo no puedo escapar la verdad, fui convicto por un jurado por un delito que en inglés es *aiding and abetting* y eso en Puerto Rico no existe. Ese delito, de hecho en Puerto Rico, de existir, *fuéramos bastantes los convictos porque eso, hasta de uno mirar cae partícipe ...*
> P.   Pero al día de hoy, mirando usted a lo que pasó, usted acepta que fue convicto, ¿cómo usted se siente con respecto a eso? ¿Usted entiende que es inocente?
> R.   Si digo que sí, es lo correcto. Si digo que no, estaría mintiendo en un lado o otro, antes o después.
> P.   O sea, usted entiende que es inocente de lo que se le acusó.

R. *Sí. Y mire si me sentía inocente que lo llevé hasta el final, porque yo fui hasta el Primer Circuito.*
P. Entonces se sentía inocente ¿ahora no?
R. Entonces sé que fui convicto y sé que cumplí y sé todo. Pero todo ese tiempo he estado pensando *y no tengo una contestación en cuanto a inocente o culpable. No encuentro una contestación en lo que he leído.*
P. Usted no entiende lo que sucedió, pero ¿usted entiende que es inocente?
R. Bueno hasta cierto grado.
P. ¿Hasta cierto grado usted entiende que es inocente? ¿Hasta qué grado?
R. Bueno, hasta, o sea, yo soy culpable hasta cierto sitio, o sea de haber conocido a Quiñones y de haberlo referido a él, como fuera. Pero en cuanto a mi actuación de que yo hice algo, de que yo intervine en el Departamento de Estado, que yo llené documentos, que yo hice algún affidavit, que yo ..... no, porque no es cierto. (Énfasis suplido.) T.E., págs. 95 y 97–98.

Las ambigüedades del peticionario Malavet Rodríguez en sus reclamos de inocencia y en sus parcas y pueriles explicaciones para sustentarla, revelan que no hay base suficiente para concluir que cree genuinamente en su inocencia; menos en su arrepentimiento.

"Al igual que en otras áreas del derecho, la aplicación de una sanción o castigo —en el más depurado quehacer de administrar justicia— presupone la individuación de la medida correctiva, atemperando su rigor a las circunstancias de cada caso en particular balanceando objetivamente los factores personales del abogado y el interés social de mantener la solidez y fundamentos éticos de la clase togada." *In re Villamil Higuera*, 104 D.P.R. 310, 319–320 (1975), opinión concurrente y disidente. No podemos olvidar que "[e]l juzgador no puede ignorar el atributo de compasión justificada, pero tampoco debe sacrificar intereses públicos de alta calidad". *In re Ardín*, 75 D.P.R. 496, 501 (1953). Entendemos que no ha alcanzado la rehabilitación que implica su reinstalación.